Daniel E. HENDRICKS; Barbara E. Hendricks, Petitioners–Appellants,

v.

COMMISSIONER of the INTERNAL REVENUE SERVICE, Respondent–Appellee.

No. 93–2453.

United States Court of Appeals, Fourth Circuit.

Argued May 10, 1994.

Decided Aug. 10, 1994.

---

**ARGUED:** Michael Edwin Caryl, Bowles, Rice, McDavid, Graff & Love, Martinsburg, WV, for appellants. William J. Patton, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee. **ON BRIEF:** David A. DeJarnett, Bowles, Rice, McDavid, Graff & Love, Martinsburg, WV, for appellants. Loretta C. Argrett, Asst. Atty. Gen., Gary R. Allen, Teresa E. McLaughlin, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee.

Before ERVIN, Chief Judge, MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge ELLIS wrote the opinion, in which Chief Judge ERVIN and Judge MICHAEL joined.

## OPINION

ELLIS, District Judge:

Appellants, a West Virginia surgeon and his wife,[1] appeal a United States Tax Court decision disallowing certain deductions and finding that defendants owed additional taxes. This result followed the Tax Court's determination that appellants' operation of a farm in Jefferson County, West Virginia did not constitute an activity "engaged in for profit" within the meaning of Internal Revenue Code § 183. Because we find that the Tax Court's determination was not clearly erroneous, we affirm.

### I.

Appellant Daniel E. Hendricks ("Hendricks") is a physician and surgeon practicing in Martinsburg, West Virginia and residing in Inwood, West Virginia. He has a lucrative practice and his income from his medical practice and other sources totaled $313,337 in 1987, $383,533 in 1988, and $315,376 in 1989.

In 1968, Hendricks purchased a 180 acre farm in Jefferson County, West Virginia for $50,000. Located on the property are two metal sheds, a barn for cattle and hay storage, and a "loafing shed."[2] There are no other residential or recreational structures on the property. Hendricks owns a substantial quantity of farm equipment, including some twenty-five tractors, approximately half of which are not in operating condition and are used primarily as a source of spare parts. The farm equipment originally cost roughly $224,000.

Most of the farm's acreage consists of pasture land. The previous owner had grown small grain and hay, and raised cattle. Hendricks grew small grain from 1968 to 1974, but thereafter switched exclusively to cattle raising. During the years at issue, Hendricks maintained 70 to 100 head of cattle on the farm, and cattle sales were his only source of farm income.

Hendricks is undeniably energetic and hard-working. During the relevant time period, he worked in his medical practice from about 8:00 a.m. to 8:00 p.m. Monday through Friday and for a few hours on Sunday evenings as well. In addition, he was on call one day out of five and one weekend out of five. Nor was this the extent of his work activities; he also worked on the farm virtually every Saturday, most Sundays, and sometimes on weekdays.[3] Despite Hendricks' energy and diligence, the farm was hardly a financial success. Only once in more than two decades did the farm show a profit. Over the years Hendricks, who is not without farming experience,[4] took a number

---

1. Appellant Barbara Hendricks is a named party solely because she and her husband filed joint tax returns for the years in question.

2. For the benefit of our readers without farming experience, we note that a "loafing shed" is a shade structure for farm animals who wish to escape the hot sun.

3. Presumably, this means that when Hendricks worked on the farm on weekdays, he did so either before 8:00 a.m., or after 8:00 p.m.

4. Hendricks grew up on his parents' nearby farm. After his father died in 1970 and continuing until 1984, Hendricks worked both his farm and his parents' farm on weekends. After Hendricks' mother moved to a nursing home in 1984,

of steps to reduce costs and improve the farm's profitability. Significantly, however, he chose not to increase the acreage or cattle population, steps which he acknowledged might well have improved the farm's profitability. In any event, despite his efforts to move the farm into the black, Hendricks recorded losses for twenty out of twenty-one years; his cumulative operational losses incurred from 1971 to 1991 amounted to $569,000. Hendricks claimed farm expense deductions totalling $126,878.

The Commissioner of the Internal Revenue Service, following an audit of tax years 1987, 1988 and 1989, concluded (1) that Hendricks' farming activities were not "an activity engaged in for profit" as defined at § 183 of the I.R.C., (2) that certain deductions Hendricks claimed with respect to his farming activities should be disallowed, and (3) that there were deficiencies in Hendricks' taxes in the aggregate amount of $39,318 for 1987, 1988 and 1989.

Hendricks and his wife petitioned the Tax Court for review. Upon review the Tax Court, though crediting Hendricks with some farming expertise and with making some efforts to improve the farm's profitability, affirmed the Commissioner's decision, concluding that Hendricks had not operated his farm with the requisite profit motive. Hendricks and his wife filed a timely appeal.

## II.

On review, we must affirm the decision of the Tax Court unless it is clearly erroneous. *Faulconer v. Commissioner*, 748 F.2d 890, 895 (4th Cir.1984). The Tax Court's decision is clearly erroneous only where "although there is evidence to support it, on the entire evidence the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id.; see United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Thus, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Thomas v. Commissioner*, 792 F.2d 1256, 1260 (4th Cir.1986), *citing Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

## III.

Section 183(a) of the Code provides that if an activity is not engaged in for profit, "no deduction attributable to such activity shall be allowed," except as otherwise provided for in § 183(b).[5] An "activity not engaged in for profit" is defined as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." 26 U.S.C. § 183(a) and (c) (1988). Thus, to prevail on his contention that the Tax Court erred in disallowing his farm-related deductions, Hendricks must show that he engaged in farming activities for the purpose of making a profit.[6] In this regard, Treasury Regulation § 1.183–2(a) is instructive. It provides that:

> [t]he determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Although a reasonable expectation of profit is not required, the facts and circumstances must indicate

he tried unsuccessfully to purchase his parents' land.

5. 26 U.S.C. § 183(b)(1) permits certain deductions that do not require a profit motive, while 26 U.S.C. § 183(b)(2) allows deductions that require a profit motive provided these deductions do not exceed the total gross income derived from the activity. Neither provision applies here. Nor is Hendricks, having realized a profit only once over the past two decades, entitled to benefit from the presumption that a taxpayer is presumed to have engaged in a for-profit activity if the gross income derived for three or more taxable years in the five-year period ending with the taxable year in issue exceeds the deductions attributable to the activity. 26 U.S.C. § 183(d) (1988).

6. *See Commissioner v. Groetzinger* , 480 U.S. 23, 35, 107 S.Ct. 980, 987, 94 L.Ed.2d 25 (1987) (for an activity to constitute a "trade or business" within the meaning of § 162, "the taxpayer's primary purpose for engaging in the activity must be for income or profit"); *Antonides v. Commissioner*, 893 F.2d 656, 659 (4th Cir.1990) (an expense is not deductible under Section § 212 unless the taxpayer enters into the transaction in which the expense is incurred primarily for profit).

that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit.... In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent.

26 C.F.R. § 1.183–2(a) (1993); *see Faulconer*, 748 F.2d at 894.

Consistent with the regulation, courts typically examine nine factors in determining whether a taxpayer engaged in an activity for profit: (1) the extent to which the taxpayer carries on the activity in a business-like manner; (2) the expertise of the taxpayer and his advisors; (3) time and effort expended by the taxpayer in conducting the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the taxpayer's success in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or losses in the activity; (7) the amount of occasional profits earned, if any; (8) the taxpayer's financial status; and, (9) elements of personal pleasure or recreation in the activity. 26 C.F.R. § 1.183–2(b)(1)–(9) (1993). These factors are not exclusive and no one factor, or number of factors, is dispositive. *Faulconer*, 748 F.2d at 894; *Golanty v. Commissioner*, 72 T.C. 411, 426, 1979 WL 3683 (1979), *aff'd without published opinion* 647 F.2d 170 (9th Cir.1981). And at all times, the taxpayer has the burden of showing that the activity was engaged in for profit. *See Faulconer*, 748 F.2d at 893.

These principles, applied here, compel the conclusion that the Tax Court was not clearly erroneous in determining that Hendricks did not operate his farm with the requisite profit motive. While Hendricks asserts the Tax Court misconstrued his testimony [7] and erroneously concluded that he did not carry on his farming activities in a "business-like manner," we do not find that the Tax Court's determination was clear error. The Tax Court explicitly credited Hendricks with taking various steps to increase profitability, but found it "more significant" that Hendricks knew of steps he might have taken, but failed to take, to improve the farm's profitability.[8] *See* 26 C.F.R. § 1.183–2(b)(1) (indicating that a change in operating methods, adoption of new methods, or abandonment of unprofitable methods, consistent with an intent to improve profitability, may indicate a profit motive); *Faulconer*, 748 F.2d at 896.[9] Under the facts and circumstances of this case, we cannot say that the Tax Court's weighing of the relevant evidence was clear error.

Nor is there merit to Hendricks' contention that the Tax Court implicitly required him to withdraw from his principal occupation as a physician in order to demonstrate that the time and effort he devoted to farming activities indicated a genuine profit

7. Hendricks argues that the Tax Court "misconstrued" his testimony regarding efforts to enhance the farm's profitability through adding additional land and cattle, and spending more time at the farm. Specifically, Hendricks contends that the Tax Court overlooked his efforts to decrease costs by hiring a part-time helper, doing his own routine veterinary work, keeping a "substantial" amount of equipment on hand, and seeking the assistance of family members for certain farm-related tasks. He also contends that the Tax Court overlooked his efforts to increase the utility of his land by converting his land from small grain production to pasture and mowing the pastures to enhance grass production for grazing. Both contentions are refuted by the Tax Court's Opinion, which broadly credited Hendricks with taking some steps to increase the farm's profitability.

8. Contrary to Hendricks' assertions, the Tax Court did not indicate that increasing the farm's acreage and size of the cattle herd were the only ways of increasing profitability.

9. While Hendricks disputes the Tax Court's characterization of his testimony, the record indicates that at a minimum Hendricks was aware that increasing acreage and the size of his herd might enable his operations to "reach a critical point where I could eventually sell enough that it would be on the positive side, or positive cash flow." J.App. at 100.

On appeal Hendricks contends, for the first time, that these steps would have been prohibitively costly. Hendricks' testimony before the Tax Court refutes this, as Hendricks indicated "I don't think it is going to increase expenses that much, no. I think there is a point at which you can override your expenses by sheer numbers of having that many more beef cows to sell." J.App. at 100.

motive.[10] *See* 26 C.F.R. § 1.183–2(b)(3); *see, e.g., Scheidt v. Commissioner,* T.C.M.1992–2 (1992) (full-time employment does not preclude a finding that an activity was engaged in with the requisite profit motive). Nothing in the Tax Court's opinion indicates such a finding. Rather, the Tax Court credited appellant with having worked on his farm almost every weekend since 1970, but noted that appellant was a full time physician who was on call one night out of every five and one weekend out of five. Despite appellant's assertions that the Tax Court misconstrued his testimony, appellant himself conceded that spending more time on his farm might have increased its profitability. Accordingly, the Tax Court's determination that this factor favored the Commissioner was not clear error.[11]

■ While the presence of personal motives in conducting an activity may indicate that the activity was not engaged in for profit purposes, 26 C.F.R. § 1.183–2(b)(9), "gratification received from an activity is insufficient in itself to cause the activity to be considered not engaged in for profit." *Faulconer,* 748 F.2d at 901.[12] Appellant contends that the Tax Court misconstrued this "personal pleasure or recreation" test by implicitly requiring him to express a desire to sell the farm in order to demonstrate that he was farming for profit rather than pleasure. Nothing in the Tax Court's opinion suggests this. Only after considering the other factors enumerated at 26 C.F.R. § 1.183–2(b) did the Tax Court conclude that the record "suggests" that

Hendricks engaged in farming for pleasure. Hence, the Tax Court's determination that this factor favored appellee was not clearly erroneous.

■ Next, the Tax Court correctly concluded that the farm's historic lack of profitability weighs against a profit motive. To be sure, a taxpayer may have a profit motive despite a history of losses. *See Bessenyey v. Commissioner,* 45 T.C. 261, 274 (1965), *aff'd* 379 F.2d 252 (2d Cir.), *cert. denied,* 389 U.S. 931, 88 S.Ct. 293, 19 L.Ed.2d 283 (1967). Yet, a record of continued losses over an extended period of time is plainly relevant in discerning a taxpayer's true motivation. *See Golanty,* 72 T.C. at 426; *Remuzzi v. Commissioner,* 54 T.C.M. (CCH) 1479, 1482 (1988), *aff'd without published opinion* 867 F.2d 609 (4th Cir.1989). Here, the farm lost money for twenty out of twenty-one years. As Hendricks failed to show that these losses were attributable to unforeseen or fortuitous circumstances,[13] the Tax Court did not err in concluding that this factor favored appellee.

■ Further, "substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit." 26 C.F.R. § 1.183–2(b)(8).[14] Indeed, the facts here are somewhat similar to those set forth at 26 C.F.R. § 1.183–2(c) Example 1, which indicates that a determination that a farming activity was not engaged in for profit may be

---

**10.** Hendricks attacks the Tax Court's use of the word "substantial" in describing how much time a taxpayer must devote to an activity to show that he engaged in that activity with a profit motive. This contention is without merit, for 26 C.F.R. § 1.183–2(b)(3) uses an essentially similar modifier; it provides that a profit motive requires "much personal time and effort." 26 C.F.R. § 1.183–2(b)(3); *see Faulconer,* 748 F.2d at 897–98.

**11.** *Cf. Faulconer,* 748 F.2d at 898 (finding that § 1.183–2(b)(3) favored taxpayer where taxpayer "devotes nearly all his time to the farming operation").

**12.** Hendricks emphasizes that as there were no residential or recreational facilities on the farm, any enjoyment he derived from working there must have come from his farming activities.

**13.** *See Faulconer,* 748 F.2d at 900–901 (indicating that substantial losses suffered by farmer and horse breeder did not preclude a finding that the farmer operated his property with the requisite profit motive where these losses were attributed to a series of unforeseeable business hardships, including injuries to several racing horses).

**14.** Enactment of § 183 was motivated in part by the view that:

[w]ealthy individuals have invested in certain aspects of farm operations solely to obtain "tax losses"... for use to reduce their tax on other income.... One of the remarkable aspects of the problems pointed up by the fact that persons with large non-farm income have a remarkable propensity to lose money in the farm business. *Remuzzi,* 54 T.C.M. at 1482; *see Golanty,* 72 T.C. at 428–29.

appropriate where a wealthy taxpayer, who was born on a farm and has expressed a strong preference for living on a farm, inherits a farm that never made a profit before the taxpayer inherited it and which continues to have substantial losses that offset a considerable income.[15] Here, Hendricks, as a physician and surgeon, had an aggregate income of some $1,012,246 for the tax years in question. As this is clearly "substantial income from other sources," and Hendricks' farm deductions had substantial tax benefits, the Tax Court did not err in concluding that this factor favored appellee.

 Finally, Hendricks contends that the Tax Court failed adequately to consider the appreciation of his farming assets.[16] We do not agree. It is true that federal regulations provide that an expectation that assets used in a particular activity may appreciate in value is a factor in determining whether an individual engaged in a particular activity with the requisite profit motive. 26 C.F.R. § 1.183–2(b)(4). Accordingly, a taxpayer may be found to have the requisite profit motive, even if no profit is derived from current operations, if income from the activity together with the appreciation of land used in the activity will exceed operational expenses. *Id.* Yet, the mere expectation that land values may appreciate is not sufficient, in itself, to demonstrate that an activity was engaged in for profit. Thus, while Hendricks indicated that he generally expected his land to appreciate in value, "such a notion, without any probative foundation, is not enough to support a profit motive and, in particular, a contention that the appreciation could be anticipated to be sufficient to recoup petitioner's farming losses." *Keelty v. Commissioner,* 47 T.C.M. 1455 (1984). Accordingly, the Tax Court did not commit clear error in concluding that appreciation in Hendricks' tax related assets was not sufficient to support the finding of a profit motive.

In sum, the Tax Court's decision is based on the proper legal standards and is not clearly erroneous. Accordingly, the Tax Court's decision is

*AFFIRMED.*

---

**15.** We acknowledge that there are several differences between Example 1 and the instant case, as the hypothetical farm discussed at 26 C.F.R. § 1.182–2(b)(9) was inherited while Hendricks purchased his farm, and the hypothetical farm was located in an area that was rapidly becoming residential, while this is not apparently the case here. Nonetheless, we find Example 1 highly instructive.

**16.** While the specific value of Hendricks' land was disputed, the Tax Court concluded Hendricks' land value had appreciated during the relevant period.