T.C. Memo. 1996-259

UNITED STATES TAX COURT

RICHARD H. DALEY AND ESTATE OF ANNE H. DALEY,
DECEASED, RICHARD H. DALEY, EXECUTOR, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9816-93.              Filed June 5, 1996.

Gregory A. Robinson, for petitioners.

Thomas S. Dileonardo, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WRIGHT, Judge: Respondent determined deficiencies in, an
addition to, and penalties on petitioners' Federal income taxes
as follows:[1]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years at issue, and
all Rule references are to the Tax Court Rules of Practice and
(continued...)

|       |            | Addition to Tax and Penalties |              |
| Year  | Deficiency | Sec. 6661                     | Sec. 6662(a) |
|-------|------------|-------------------------------|--------------|
| 1988  | $11,351    | $2,838                        | ---          |
| 1989  | 11,536     | ---                           | $2,307       |
| 1990  | 10,058     | ---                           | 2,012        |

After concessions, the issues for decision are:

(1)  Whether petitioners' horse activity during the taxable years at issue was engaged in for profit.  We hold that it was not.

(2)  Whether petitioners are liable for the addition to tax under section 6661 for a substantial understatement for taxable year 1988.  We hold that they are.

(3)  Whether petitioners are liable for the accuracy-related penalty under section 6662(a) for a substantial understatement for taxable years 1989 and 1990.  We hold that they are.


FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein.  At the time the petition was filed, petitioner[2] resided in Phoenix, Arizona.  All references to petitioner in the singular are to Richard H. Daley.

---

[1](...continued)
Procedure.

[2]Anne H. Daley died during taxable year 1989, and petitioner Richard H. Daley is the executor of Anne H. Daley's estate.

Petitioner has practiced medicine as a surgeon in Arizona since 1967. His medical practice requires between 50 and 60 hours of his time each week. During the 12-year period ending with 1992, petitioner's average wage income from his medical practice was $266,507. Similarly, during the taxable years at issue, petitioner's average wage income from his medical practice was $299,687. Petitioner has always relied on a professional accountant to manage the books and records of his medical practice.

During the years 1972 through 1986, petitioner was a partner in M.L. Leasing, a partnership engaged in the leasing of various types of goods. In 1987, this partnership was dissolved and petitioner began operating M.L. Leasing as a sole proprietorship. Petitioner continued to operate M.L. Leasing as such through at least March 1994. M.L. Leasing's books and records were managed by a professional bookkeeping service. During taxable years 1983 through 1992, petitioner reported the following profits and losses from his interest in M.L. Leasing:[3]

| Year | Profit (Loss) |
| --- | --- |
| 1983 | $7,270 |
| 1984 | 1,280 |
| 1985 | 7,565 |
| 1986 | (2,000) |
| 1987 | 9,283 |
| 1988 | 4,429 |

[3]Until 1987, M.L. Leasing was a partnership. Accordingly, the amounts reflected for years prior to 1987 indicate petitioner's share of partnership profit and losses.

| 1989 | (2,313) |
| 1990 | (4,535) |
| 1991 | 4,665 |
| 1992 | 5,458 |

Petitioner grew up in rural Nebraska and spent much of his time "on the farm". He developed an interest in horses at a young age and retained that interest into adulthood. Sometime during the 1970's, petitioner developed an interest in "cutting horses". Historically, a cutting horse was a horse bred and trained to serve as a tool for separating (cutting) cattle from a herd. Generally speaking, cutting horses are now assets that are used by their owners to compete against other cutting horse owners in organized "cutting" competitions for prize money. Competitions featuring cutting horses are held at both national and local levels, and entrants are judged on their ability to "cut" a single steer from a herd of steers.

Petitioner began engaging in cutting horse activities in 1979. This activity has continued uninterrupted since its commencement and has involved breeding and training horses to compete in organized events. Petitioner entered his horse activity without the aid of a written market study, and he has not relied on a formal profit or business plan at any time. In managing the affairs of his activity, petitioner used a ledger to record various transactions and events. He also maintained a separate "drop" file for most of his horses. The ledger and drop

files, however, are not completely accurate, and some significant discrepancies and omissions exist in each.

During the course of the 14-year period ending with 1992, petitioner owned in excess of 30 horses.[4]  These horses were either purchased by petitioner or born to horses that he already owned.  In either event, most were eventually sold during this 14-year period, although some died and others were donated to various people or organizations.

Throughout the entire course of his horse activity, petitioner never experienced a net profit, although he did generate some income.  Income was generated from several sources, including prize winnings, foal sales, and stud fees.  Expenses from petitioner's horse activity, however, always exceeded such income.  Boarding and training costs have constituted the majority of such expenses.

Petitioner rode his horses in the evenings and on weekends. He also rode his horses at numerous organized cutting horse events.  Although petitioner's spouse had little interest in horses, petitioner's two children occasionally rode certain horses for various reasons.  On the average, petitioner devoted 10 to 12 hours each week to his horse activity.

---

[4]In any one year petitioner owned as few as 2 and as many as 11 horses.  Petitioner owned an average of approximately eight horses per year.

Petitioner boarded his horses at a local stable and relied extensively on the services of a David Costello (Costello) to maintain and train his horses. The maintenance performed by Costello consisted of typical physical labors associated with horse ownership. Costello is a professional horse trainer and has a national reputation in the cutting horse industry. He owned and operated the stables and training facility used by petitioner during the taxable years at issue.

Petitioner began deducting expenses associated with his horse activity in 1979, its year of inception. The following table lists the income, expenses, and losses reported by petitioner during the 12-year period ending with 1992:

| Year | Gross Receipts | Expenses | Loss |
|------|---------------|----------|------|
| 1981 | $0 | $27,598 | $27,598 |
| 1982 | 8,770 | 41,149 | 32,379 |
| 1983 | 15,050 | 49,715 | 34,665 |
| 1984 | 4,746 | 33,498 | 28,752 |
| 1985 | 1,949 | 33,397 | 31,448 |
| 1986 | 2,531 | 36,888 | 34,357 |
| 1987 | 12,580 | 72,858 | 60,278 |
| 1988 | 7,588 | 46,295 | 38,707 |
| 1989 | 3,927 | 37,414 | 33,487 |
| 1990 | 1,273 | 33,448 | 32,175 |
| 1991 | 167 | 33,438 | 33,271 |
| 1992 | 3,271 | 46,460 | 43,189 |
| Total | 61,852 | 492,158 | 430,306 |

Respondent determined that petitioner did not operate his horse activity with the intent of earning a profit and disallowed

the claimed expenses to the extent such expenses exceed the income generated by the activity for each taxable year at issue.

OPINION

We must decide whether section 183 applies to petitioner's horse activity. Respondent maintains that section 183 limits the amount of expenses petitioner is entitled to deduct to an amount equal to the amount of gross income earned from his horse activity. In contrast, petitioner contends that section 183 is inapplicable because he conducted his horse activity with the requisite profit motive. We agree with respondent.

Section 183 allows only specified deductions unless an activity is engaged in for profit. Section 183(c) defines an activity not engaged in for profit as any activity other than one with respect to which deductions are allowable under section 162 or under paragraphs (1) or (2) of section 212. An activity engaged in for profit is one in which the taxpayer has an actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). This profit expectation need not have been reasonable, but the activity must have been either entered into or continued with a bona fide objective of making a profit. Taube v. Commissioner, 88 T.C. 464, 478-479 (1987); Dreicer v. Commissioner, supra at 644-645; sec. 1.183-2(a), Income Tax Regs. Profit in this context means economic profit,

independent of tax consequences. <u>Antonides v. Commissioner</u>, 91 T.C. 686, 694 (1988), affd. 893 F.2d 656 (4th Cir. 1990).

The determination of profit objective is factually based and requires a consideration of all the surrounding facts and circumstances. <u>Finoli v. Commissioner</u>, 86 T.C. 697, 722 (1986); sec. 1.183-2(b), Income Tax Regs. Although the purpose of the inquiry is to ascertain the taxpayer's subjective intent, greater weight is given to objective facts than to self-serving statements of intent. <u>Beck v. Commissioner</u>, 85 T.C. 557, 570 (1985); sec. 1.183-2, Income Tax Regs.

In conducting the profit objective analysis, courts have relied on a nonexclusive list of nine factors enumerated in the regulations under section 183. See <u>Hendricks v. Commissioner</u>, 32 F.3d 94 (4th Cir. 1994), affg. T.C. Memo. 1993-396; <u>Independent Elec. Supply, Inc. v. Commissioner</u>, 781 F.2d 724 (9th Cir. 1986), affg. <u>Lahr v. Commissioner</u>, T.C. Memo. 1984-472; <u>Elliott v. Commissioner</u>, 90 T.C. 960 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990). No single factor is determinative of the issue, however. <u>Golanty v. Commissioner</u>, 72 T.C. 411 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). The nine factors set forth under section 1.183-2(b), Income Tax Regs., are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on other similar or dissimilar activities; (4) the

expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity.

A careful review of the entire record in this case convinces us that petitioner has failed to carry his burden in proving that his horse activity was motivated by an actual and honest objective of making a profit. The objective facts indicate that most of the above-enumerated factors weigh in favor of respondent.

Issue 1. Profit Motive

Businesslike Manner & Adequate Records

The fact that an activity is carried on in a businesslike manner and complete and accurate books and records are maintained is a factor indicating the existence of a profit objective with respect to such activity. Sec. 1.183-2(b)(1), Income Tax Regs. Respondent argues that petitioner failed to operate his horse activity in a businesslike manner. In support of this argument, respondent advances several contentions.[5] First, respondent argues that petitioner failed to conduct a formal market study

---

[5]To the extent that such arguments are not addressed herein, we have found them to be without merit.

prior to undertaking his horse activity. Respondent also contends that petitioner's failure to formulate a credible business or profit plan indicates that his actions were not businesslike and that he lacked a profit motive. We agree with both of these contentions. While the law does not require a taxpayer to engage in extensive formalities prior to undertaking a venture, it does require that the taxpayer conduct a basic investigation of the factors that would affect profit. Golanty v. Commissioner, supra at 432. Although petitioner testified that he started his horse activity after consultation with various professionals within the industry, such testimony was not credible, and it appears that petitioner did little else in terms of an investigation. Petitioner undertook his horse activity with no concept of what his ultimate costs might be or how he might achieve any degree of cost efficiency. Similarly, petitioner entered and conducted his activity not knowing the amount of revenues he could expect or what risks might impair the generation of such revenues. It is quite likely that this stems from his failure to consider any type of financial planning instrument during the course of his activity. Moreover, at trial petitioner was asked whether he was aware of the amount of losses incurred since the inception of his horse activity. Not only was petitioner unaware of the amount of total losses incurred, but he was also unaware of the amount of losses incurred during 1993, the year immediately prior to trial. It seems to us peculiar

that someone claiming a particular activity is motivated by profit would not know simple but significant information such as this with respect to that activity.

Respondent also points to numerous omissions in petitioner's records as further support for her contention that petitioner lacked the requisite profit motive with respect to his horse activity.  We agree.  While maintaining less than precise records does not conclusively establish the lack of a profit objective, see Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979), petitioner's records are so fraught with omissions and inconsistencies that it is difficult to imagine how they served any beneficial purpose.  Petitioner's records do not reflect the income and expenses associated with each individual horse, and petitioner testified that he could not otherwise tell from his records whether any one horse was profitable in any particular year.  Similarly, as noted earlier, petitioner's records do not reflect the activity's past losses.  Furthermore, petitioner testified that the ledger contained various data pertaining to each horse; however, respondent has shown that much of such data is lacking from the ledger.  Petitioner's drop files are equally incomplete.  In fact, petitioner failed to maintain a drop file on several of his horses.  The drop files are supposed to contain information pertaining to registration and breeding, among other things, but such information is lacking from several of the files that do exist.  Not only are petitioner's records incomplete,

some contain inconsistencies of a significant nature. Inconsistencies also exist between petitioner's records and the information contained on some of his tax returns.

In light of the facts before us, we find that petitioner did not operate his horse activity in a businesslike manner. We also find that he maintained inadequate and insufficient records with respect to such activity. Accordingly, we find that this factor weighs in favor of respondent.

## Taxpayer Expertise

The expertise of the taxpayer or his or her advisers is another factor relevant to the determination of whether such taxpayer possessed the requisite profit motive with respect to the activity in question. Sec. 1.183-2(b)(2), Income Tax Regs. Petitioner lacked any meaningful degree of expertise with regard to his horse activity, and we are not convinced that he was developing an expertise merely as a result of his associations with professionals within the cutting horse industry. However, petitioner relied extensively on Costello, an individual possessing much expertise involving horses. Because of the extent Costello was involved in petitioner's horse activity, we conclude that this factor favors petitioner.

## Time and Effort Expended

The time and effort expended by the taxpayer in carrying on the activity at issue is an indication of whether a profit motive existed with respect to such activity, particularly if there are

no substantial personal or recreational elements associated with such activity. Sec. 1.183-2(b)(3), Income Tax Regs. Petitioner maintains that he spent 10 to 12 hours each week engaged in his horse activity. Yet he failed to produce credible evidence explaining the type of work he performed. The available evidence indicates that petitioner spent much of his time riding his horses. Petitioner contends, however, that such riding was not recreational. Instead, petitioner maintains that his riding served several business purposes, including exercising and training. Petitioner also maintains that the reason he rode his horses during competitive events was to develop a better appreciation for his business and illustrate to perspective purchasers that his horses were suitable for novice riders.

The record does not support petitioner's arguments. Essentially, by relying on Costello to maintain and train his horses, petitioner avoided the rigors of his horse activity and indulged himself with its pleasantries. Petitioner's testimony otherwise is simply not credible, and we are reluctant to accept Costello's testimony as corroboration in light of his business relationship with petitioner. We conclude that petitioner's horse activity contained substantial elements of a recreational and personal nature. Accordingly, we find that this factor favors respondent.

Expectation that Assets will Appreciate

An expectation that assets used in the activity in question may appreciate in value may also be an indication of the taxpayer's motive with respect to such activity. Sec. 1.183-2(b)(4), Income Tax Regs. Petitioner contends that a principal factor underlying his motivation for engaging in his horse activity was the expectation that he would experience appreciation in the value of his horses. We recognize that appreciation in the horse industry often requires the passage of many years and is frequently dependent upon on a successful breeding and training program. It is not enough, however, that petitioner maintained the objective that his horse activity would eventually become profitable as a result of appreciation in the value of his horses. It is necessary that the objective be to realize a profit on the entire operation. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). This presupposes not only future net earnings but also future net earnings sufficient to recoup the losses which have been sustained in prior years. Id. Petitioner failed to produce credible evidence that would suggest that his activity had any realistic chance of recovering the enormous losses previously incurred.

In light of this record, we are not convinced that petitioner maintained a good faith belief that his horses would appreciate over time and that such appreciation would eventually

be sufficient to account for the losses experienced prior to such appreciation. Accordingly, we find that this factor favors respondent.

## Other Activities

The success of the taxpayer in carrying on other activities can also be some indication of whether the taxpayer had a profit motive for the activity in question. Sec. 1.183-2(b)(5), Income Tax Regs. Petitioner has no experience in similar activities; however, both his medical practice and his leasing business are successful profit-oriented activities. In any event, we find that this factor neither supports nor weakens either party's position.

## Income, Losses, and Occasional Profits

A history of income, losses, and occasional profits with respect to an activity can be indicative of whether a profit objective exists with respect to such activity. Sec. 1.183-2(b)(6), Income Tax Regs. Respondent contends that the history of losses relating to petitioner's horse activity suggests that he lacked the requisite profit motive necessary to render section 183 inapplicable. We agree. Petitioner's contention that he expected to eventually experience a profit is self-serving, unsupported by the record, and otherwise unrealistic. The uninterrupted series of losses has been sustained beyond the period which is customarily necessary to bring a similar operation to profitable status. See Engdahl v. Commissioner, 72

T.C. 659 (1979). In light of the instant facts, we find that petitioner's history of losses suggests that he lacked a profit motive in carrying on his horse activity. Accordingly, we find that this factor favors respondent.

Amount and Frequency of Occasional Profits

The amount and frequency of occasional profits earned from the activity at issue may also be indicative of a profit objective. Sec. 1.183-2(b)(7), Income Tax Regs. Petitioner's horse activity had several sources of income, yet none proved fruitful. While an opportunity to earn a substantial ultimate profit in a highly speculative venture may be sufficient to indicate that the activity is engaged in for profit even though only losses are generated, sec. 1.183-2(b)(7), Income Tax Regs, we are convinced that such a likelihood was too remote in the instant case. Accordingly, we find that this factor favors respondent.

Petitioner's Financial Status

The lack of substantial income from sources other than the activity in question may indicate the existence of a profit motive with respect to such activity. Sec. 1.183-2(b)(8), Income Tax Regs. As petitioner is a successful orthopedic surgeon earning in excess of $250,000 per year, there is little doubt that this factor favors respondent.

## Personal Pleasure or Recreation

The absence of personal pleasure or recreation relating to the activity in question may indicate the presence of a profit motive.  Sec. 1.183-2(b)(9), Income Tax Regs.  As noted earlier in this opinion, we are convinced that petitioner's horse activity contained significant recreational aspects that gave rise to many personal pleasures.  We find that the personal pleasure derived from petitioner's horse activity was the principal factor motivating his decision to enter into and carry on such activity.  Accordingly, we find that this factor favors respondent.

Having considered the facts and circumstances of this case in light of the factors set forth in section 1.183-2(b), Income Tax Regs., we conclude that petitioner did not engage in his horse activity with an actual and honest objective of making a profit within the meaning of section 183.

## Issue 2.  Addition to Tax, Sec. 6661

Respondent determined that petitioners are liable for the addition to tax pursuant to section 6661 for taxable year 1988 due to a substantial understatement of income tax.  This determination is benefited by a presumption of correctness.  Rule 142(a).

The addition to tax is 25 percent of any underpayment attributable to a substantial understatement.  Sec. 6661(a).  A

substantial understatement is one that exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6661(b)(1). If a taxpayer has substantial authority for the tax treatment of any item on the return, the understatement is reduced by the amount attributable to such authority. Sec. 6661(b)(2)(B)(i). Similarly, the amount of the understatement is reduced for any item adequately disclosed either on the taxpayer's return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii). Because petitioner has presented no argument on this issue other than to deny the underlying deficiencies, respondent's determination is sustained.

Issue 3. Accuracy-Related Penalty, Sec. 6662

Respondent determined that petitioners are liable for the accuracy-related penalty pursuant to section 6662 for taxable years 1989 and 1990 because the underpayment of income tax for such years was attributable to a substantial understatement. Again, respondent's determination is benefited by a presumption of correctness. Rule 142(a).

The accuracy-related penalty is equal to 20 percent of the portion of an underpayment to which section 6662 applies. Sec. 6662(a). Section 6662(b)(2) provides that section 6662 applies to an underpayment attributable to any substantial understatement of income tax. A substantial understatement is one that exceeds the greater of 10 percent of the tax required to be shown on the

return, or $5,000. Sec. 6662(d)(1)(A). Petitioner has presented no argument on this issue other than to deny the underlying deficiencies. Because the understatements at issue are substantial and neither is subject to reduction pursuant to section 6662(d)(2)(B)(i), section 6662(d)(2)(B)(ii), or section 6664(c)(1), respondent's determination is sustained.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155.</u>