T.C. Summary Opinion 2004-7


UNITED STATES TAX COURT


JOHN R. AND EDITH M. GARBINI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3593-00S.                 Filed January 23, 2004.


<u>James G. Sanford</u>, for petitioners.

<u>Paul K. Voelker</u>, for respondent.


PAJAK, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies in petitioners' Federal income taxes and accuracy-related penalties in the following amounts:

| Year | Deficiency | Sec. 6662(a) |
|------|------------|--------------|
| 1996 | $39,965 | $7,993.00 |
| 1997 | 36,817 | 7,363.40 |

After concessions by respondent of the medical expense issues, this Court must decide: (1) Whether petitioners were not engaged in an activity for profit under section 183, (2) whether petitioners were entitled to claimed Schedule F, Profit or Loss From Farming, deductions for the taxable years in issue, and (3) whether petitioners were liable for accuracy-related penalties under section 6662(a) for the taxable years in issue.

Some of the facts in this case have been stipulated and are so found. Petitioners' residence was in Myrtle Creek, Oregon, at the time they filed their petition.

Petitioners timely filed Forms 1040, U.S. Individual Income Tax Return, for 1996 and 1997. On the Forms 1040 for both years, petitioner John R. Garbini (petitioner) listed his occupation as rancher. Petitioner Edith M. Garbini's occupation was listed as housewife. Both petitioners were senior citizens during the taxable years in issue. For each taxable year in issue, petitioners attached to their Form 1040, Schedule F, Profit or Loss From Farming. On Schedule F for 1996, petitioners reported no gross income and deducted expenses in the amount of $127,341,

for a net loss of $127,341.  On Schedule F for 1997, petitioners reported no gross income and deducted expenses in the amount of $124,584, for a net loss of $124,584.  Respondent disallowed petitioners' 1996 and 1997 Schedule F loss deductions in full because petitioners did not substantiate their deductions and because petitioners were not engaged in an activity for profit. Due to the fact that petitioners did not substantiate their deductions, section 7491(a) is not applicable.  Therefore, petitioners have the burden of proof with respect to these determinations.  Rule 142(a).

We first address whether petitioners were not engaged in an activity for profit.  Section 183(a) disallows deductions attributable to an activity not engaged in for profit, except as provided under section 183(b).  For an activity not engaged in for profit, section 183(b)(1) allows deductions that would be allowable without regard to whether or not an activity is engaged in for profit.  Section 183(b)(2) allows deductions that would be allowable if the activity were engaged in for profit, but only to the extent that gross income attributable to the activity exceeds the deductions allowable under section 183(b)(1).  Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

The standard for determining whether an expense is deductible under section 162 or 212, and not subject to the limitations of section 183, requires a taxpayer to demonstrate that the activity was carried on with the actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the actual and honest objective of making a profit. Dreicer v. Commissioner, supra at 645. The taxpayer's objective to make a profit must be analyzed by looking at all the surrounding facts. Id. These facts are given greater weight than the taxpayer's mere statement of intent. Id.

The regulations under section 183 provide a nonexclusive list of relevant factors that should be considered in determining whether the taxpayer has the requisite profit objective. Sec. 1.183-2(b), Income Tax Regs. The factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar

activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation. Id. These factors are not applicable or appropriate in every case. Abramson v. Commissioner, 86 T.C. 360, 371 (1986). The facts and circumstances of the case in issue remain the primary test. Id.

In determining whether petitioners were engaged in an activity with the requisite profit objective, all the facts and circumstances of their situation must be taken into account. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). No single factor is controlling, nor is the existence of a majority of factors favoring or disfavoring a profit objective necessarily controlling. Hendricks v. Commissioner, 32 F.3d 94, 98 (4th Cir. 1994), affg. T.C. Memo. 1993-396; sec. 1.183-2(b), Income Tax Regs.

In 1984, petitioners purchased 666 acres of land (the ranch) in Myrtle Creek, Oregon. Except for two log cabins, the ranch was unimproved, and contained trees, pasture land, and three ponds. Since about 1986, petitioners have cleared areas and planted more trees, had cattle graze the pasture land, and built roads, ponds, and barns. Petitioners' residence was built in

about 1985.  Petitioners moved into the house in approximately 1987, and have resided there through the time of trial.  In 1986, petitioners sold a mobile home park for $7 million.

In applying the factors to determine profit objective, we first consider the manner in which the taxpayer carries on the activity.  "The fact that the taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity is engaged in for profit."  Sec. 1.183-2(b)(1), Income Tax Regs.  Petitioners did not maintain books and records.  Rather, petitioner made a monthly list of expense categories and, based on his canceled checks, recorded the amounts expended for each category.  At trial, petitioner submitted various invoices, canceled checks, and the monthly lists for the taxable years in issue.  Petitioner did not have a business plan to make money from the ranch. Petitioner did not keep the type of records which could be used to increase the profitability of a business.  Petitioner never prepared budgets or market projections which would outline strategies for ensuring a profitable business venture and making informed business decisions on a periodic basis.  Such lack of information upon which to make educated business decisions tends to belie a taxpayer's contentions that an activity was pursued with the primary objective of making a profit.  Dodge v. Commissioner, T.C. Memo. 1998-89, affd. without published opinion

188 F.3d 507 (6th Cir. 1999).

"A change of operating methods, adoption of new techniques or abandonment of unprofitable methods in a manner consistent with an intent to improve profitability may also indicate a profit motive." Sec. 1.183-2(b)(1), Income Tax Regs. Petitioner contends that he has made efforts to reduce expenses in order to operate the ranch in a profitable manner. Nothing in the record indicates what efforts to reduce expenses, if any, were made during the taxable years in issue. Petitioner never ascertained how or when he would make a profit or how he could change his operating methods to improve his profitability. Although petitioners owned cattle during the years in issue, there were no sales of cattle during those years. Nor was there any evidence of an effort to raise cattle for profit on their ranch.

We next consider the expertise of the taxpayer. Since purchasing the ranch, petitioner has learned about the types of trees that should be planted in specific areas on the ranch. Petitioner also claimed that in 1986 he began studying, researching, and compiling data on the marketing and sale of verified emission reduction offsets (carbon credits) to polluting entities, and that he has consulted about that subject with the Oregon Department of Forestry and a chemistry/biology professor who holds a Ph.D. Yet, during the years in issue petitioner did not put any acquired knowledge to use in an endeavor to make a

profit.

We next consider the time and effort expended by the taxpayer in carrying on the activity. Petitioner worked on the ranch almost everyday and employed one full-time ranch hand during the taxable years in issue. The ranch hand performed general maintenance of the property and barns. Petitioner occasionally hired outside temporary labor.

We next consider the taxpayer's expectation that the assets used in the activity may appreciate in value. Petitioner contends that he has enhanced and created value in the trees and the carbon credits related to the trees. Petitioner paid $566,000 for the ranch in its undeveloped condition. With the improvements made by petitioner and the value of the timber and carbon credits, petitioner estimates that the value of the trees alone is $2.5 million and that the ranch is worth $15 million. Petitioner did not provide any basis for such estimates. Petitioner stated that since 1984, with the exception of 1994 and 1995, he has planted 3,000 to 5,000 trees per year. Petitioner further stated that these trees are not considered suitable for harvesting until 7 years after planting. We note that no trees were harvested during the taxable years in issue. Petitioner contends that the growing trees have value and profit potential in the form of cut timber and carbon credits. Again, petitioner never sold any carbon credits during these 2 taxable years.

We next consider the success of the taxpayer in carrying on other similar or dissimilar activities.  Prior to purchasing the ranch, petitioner said he purchased undeveloped land in San Jose, California, and developed "the first luxury mobile home park for senior citizens in the state".  Petitioners owned and operated the mobile home park for approximately 20 years.  Petitioner stated that petitioners worked 7 days per week and employed one groundsman.  Petitioner further stated that the mobile home park operated profitably after the first 10 years and that 10 years thereafter, petitioners sold the mobile home park for $7 million.

The taxpayer's history of income or losses with respect to the activity is another factor.  At trial, petitioner did not provide a history of income or losses for his ranch.  During the taxable years in issue, losses exceeded $250,000, an average of $125,000 for each year.  Although petitioner claimed that the losses since 1997 have lessened, petitioner admitted that the losses for the years before those in issue would have been roughly the same as the taxable years in issue.  Over this approximate time frame of 12 years, petitioner incurred losses of $1,500,000.

The amount of occasional profits, if any, which are earned is another factor.  No profits were earned with respect to the ranch during the years in issue.

We next consider the financial status of the taxpayer.

During the taxable years in issue, neither petitioner nor his wife earned income from wages. For taxable year 1996, petitioners reported taxable interest in the amount of $139,778, dividend income in the amount of $1,832, capital gains in the amount of $55,488, and taxable Social Security benefits in the amount of $10,076. For taxable year 1997, petitioners reported taxable interest in the amount of $93,360, dividend income in the amount of $865, taxable refunds, credits, or offsets in the amount of $645, capital gains in the amount of $88,813, rental real estate income in the amount of $6,251, and taxable Social Security benefits in the amount of $10,365. For both taxable years, almost all the taxable interest income and capital gains income were derived from interest and installment payments of principal made by the buyers of petitioners' mobile home park. As a result of their other income, petitioners realized substantial tax benefits from the approximate $125,000 loss deduction for each taxable year in issue.

Finally, in determining profit objective, we consider whether there are elements of personal pleasure or recreation. Petitioners owned horses during the taxable years in issue, but petitioner stated that neither of them rode the horses for pleasure. Petitioners probably had personal pleasure from residing on a large ranch.

Although petitioners had the money to purchase the ranch and

operate it, they never had a business plan or took steps to operate the ranch to make a profit. Taking the record as a whole, we find that the facts and circumstances indicate that petitioners did not possess the actual and honest objective of making a profit from their ranch. Therefore, we find that petitioners were not engaged in an activity for profit. Sec. 183(a).

Pursuant to section 183(b)(2), deductions are allowed for an activity not engaged in for profit, but only to the extent that gross income exceeds the deductions allowable under section 183(b)(1) without regard to whether or not the activity is engaged in for profit. Petitioners did not prove that they had any such expenses. Because petitioners had no gross income for the taxable years in issue, none of their claimed expenses are deductible. Therefore, we sustain respondent's determinations.

As to the accuracy-related penalties imposed for the taxable years in issue, respondent has satisfied his burden of production under section 7491(c). Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Section 6662(a) imposes a 20 percent penalty on the portion of any underpayment of tax attributable to negligence or disregard of rules or regulations. Sec. 6662(b)(1). Negligence is any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws and includes any failure by the taxpayer to keep adequate books and records or to

substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Moreover, negligence is the failure to exercise due care or failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Disregard includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. No penalty will be imposed with respect to any portion of any underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Sec. 6664(c).

Under the facts of this case, section 6664(c) is not applicable. Petitioner's recordkeeping practice of creating monthly lists from canceled checks simply is inadequate. Such actions are not those of a prudent and reasonable person in business. On this record, we conclude that petitioners were negligent and are liable for the accuracy-related penalties under section 6662 as determined by respondent for the taxable years in issue. We need not address other grounds for respondent's determinations as to section 6662.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered
under Rule 155.