T.C. Summary Opinion 2001-155

UNITED STATES TAX COURT

THOMAS W. BURTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5613-00S.                    Filed September 26, 2001.

Thomas W. Burton, pro se.

<u>Thomas J. Fernandez</u> and <u>Miriam A Howe</u>, for respondent.


PAJAK, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $26,921 in petitioner's 1995 Federal income tax and a section 6662(a) penalty of $5,384.20. The parties now agree: (1) Mortgage interest and property tax claimed on petitioner's Schedule F, Profit or Loss From Farming, are properly deductible on his Schedule A, Itemized Deductions, as expenses for a second home, which, together with other changes respondent made to petitioner's Schedule A, results in a $22,622 increase of itemized deductions; (2) petitioner is entitled to a net operating loss carryover of only $1,146 for the 1995 tax year rather than the $64,898 claimed by him; (3) petitioner's Schedule E, Supplemental Income and Loss, rental activities are passive; and (4) petitioner is not liable for the accuracy-related penalty.

This Court must decide: (1) Whether petitioner is entitled to deduct Schedule C expenses which respondent disallowed in the amounts of $4,633 for meals and entertainment, $6,533 for travel, and $19,113 for interest; (2) whether petitioner's farm activity was engaged in for profit during 1995 and, if so, whether it was a passive activity; and (3) whether petitioner is entitled to a Schedule E rental loss in the amount of $3,712.

Some of the facts in this case have been stipulated and are so found. Petitioner resided in Newport Beach, California, at the time he filed his petition.

Petitioner is an attorney practicing in the areas of business law, trusts, estates, and technology.  He was admitted to the California State Bar in 1973.  Petitioner operated a law practice with one office in San Diego and one in Orange County.  On his Schedule C for 1995, petitioner reported $144,787 in gross income from his law practice and deducted expenses of $83,466.

Respondent disallowed $30,279 of petitioner's Schedule C deductions because petitioner did not substantiate these deductions.  The amount disallowed consists of $4,633 for meals and entertainment, $6,533 for travel, and $19,113 for interest.  At trial respondent asserted that the meals and entertainment and travel expense deductions were disallowed because petitioner allegedly did not maintain a contemporaneous business record showing a business purpose and because he deducted in 1995 some expenses charged on a credit card in 1994 but paid in 1995.

Deductions are strictly a matter of legislative grace. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers must substantiate claimed deductions.  Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  Section 7491 does not change the burden of proof where a taxpayer has failed to substantiate deductions. Higbee v. Commissioner, 116 T.C. 438 (2001).  Moreover, taxpayers must keep sufficient records to establish the amounts of the deductions.  Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965);

sec. 1.6001-1(a), Income Tax Regs.

Generally, except as otherwise provided by section 274(d), when evidence shows that a taxpayer incurred a deductible expense, but the exact amount cannot be determined, the Court may approximate the amount bearing heavily if it chooses against the taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The Court, however, must have some basis upon which an estimate can be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274(d) imposes stringent substantiation requirements for the deduction of travel and entertainment expenses. Taxpayers must substantiate by adequate records the following items in order to claim these deductions: The amount of such expense, the time and place of the travel or entertainment, the business purpose of the expense, and the business relationship to the taxpayer of persons entertained. Sec. 274(d); sec. 1.274-5T(b)(2) and (3), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015 (Nov. 6, 1985). To substantiate a travel or meals and entertainment deduction by means of adequate records, a taxpayer must maintain an account book, diary, log, statement of expense, trip sheet, and/or other documentary evidence which, in combination, are sufficient to establish each element of expenditure or use. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Travel and meals and entertainment expenses cannot be estimated under Cohan. Shea v. Commissioner, 112 T.C. 183, 188 (1999); sec. 1.274-5T(a),

Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Petitioner submitted a copy of his business day calendar for 1995. The calendar was written in various inks and records the names of the clients and employees that petitioner had lunch or dinner with on each specific day and the dates on which he traveled. We find that this record was made contemporaneously during the time the expenses were incurred. The day calendar, along with petitioner's detailed memoranda explaining the circumstances of the meals and entertainment and travel expenses, and copies of the receipts and credit card statements provide satisfactory evidence of the time and place of the expenses and that they had a business purpose. We find that the requirements of section 274(d) are satisfied.

However, of the total amount disallowed by respondent for these deductions, $642.20 of meals and entertainment expenses and $1,516.40 of travel expenses, which had been charged on a credit card in 1994, were deducted by petitioner in 1995, the year in which petitioner paid the credit card bill. We have previously held that for cash-basis taxpayers, the "use of a credit card for an otherwise deductible expense qualifies as a payment in the year the credit card charge is made, regardless of when the issuer is repaid". Schroeder v. Commissioner, T.C. Memo. 1986-583; see also Goldman v. Commissioner, T.C. Memo. 1990-8. Therefore, the payments made in 1995 for expenses charged in 1994 are not properly deductible in 1995. Accordingly, we sustain respondent's disallowance of meals and entertainment expense to

the extent of $321 ($642 less 50 percent pursuant to section 274(n)), and of travel expense to the extent of $1,516. Thus, petitioner is entitled to deduct $4,312 for meals and entertainment and $5,017 for travel in addition to the amounts allowed by respondent.

In 1994, petitioner did not have enough cashflow to fully pay off his credit cards, so he made minimum payments. In 1995, petitioner was able to pay an accumulated balance and the corresponding interest. Petitioner deducted $26,113 of interest expense on his Schedule C. Respondent allowed the deduction of $7,000 but disallowed $19,113 of the alleged interest expense paid to the credit card company, MBNA. Respondent contends that petitioner did not substantiate that he paid the $19,113 in interest or that the expense is deductible under section 162.

In general, there is "allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." Sec. 163(a). Nevertheless, an individual is not entitled to a deduction for personal interest. Sec. 163(h). Certain interest, including "interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee)" is not personal interest. Sec. 163(h)(2)(A). Because petitioner is a cash basis taxpayer, interest allocable to his business debts is deductible when paid. Sec. 163(a).

Petitioner's bookkeeper testified that petitioner used his MBNA credit card almost exclusively for business purposes and

that he had a separate card for personal use. The charges on the MBNA statements are for business meals, as we have previously determined, cellular phone, gas, and other such items. However, there are some charges that may or may not be business related. Petitioner's bookkeeper testified that she actually generated all the checks. We found her to be a credible witness.

Petitioner had a balance of more than $37,000 in his MBNA credit card account on January 1, 1995. Petitioner paid a total of $33,715 to MBNA in 1995. We believe that many of the charges on the MBNA credit card account were for business expenses under section 162 and that interest was paid in 1995, as well as much of the debt. However, there is no evidence that $19,113 of the $33,715 paid to MBNA was for interest, not debt. Moreover, respondent allowed petitioner an interest deduction of $7,000. This amount roughly corresponds to 16.9 percent interest, the interest rate on the MBNA card, applied to an average balance of $37,000 for one year. Because petitioner was carrying the $37,000 balance in the prior year and was making minimal payments, it is likely that additional interest accumulated which was paid off in 1995 when petitioner made the larger payments to MBNA. Accordingly, under Cohan v. Commissioner, supra, we allow petitioner to deduct $2,000 of interest in addition to the amount allowed by respondent and sustain respondent's disallowance to the extent of $17,113.

Petitioner also filed a Schedule F for an apple and timber farm located on Palomar Mountain. The farm was acquired by

- 8 -

petitioner in 1977, and the apple and timber activity began a couple of years thereafter. The farm consists of five parcels of land. Four of the parcels are used in farming and the fifth has a house on it. The apple orchard portion of the property consists of approximately 10 acres with about 250 apple trees. The house is on a parcel of 18 acres. Approximately 92 acres consist of either a mixed forest or hardwoods that petitioner has planted. The hardwoods are primarily oak and black walnut. The trees will take about 40 years to mature. The farm income is from people who pick their own apples in the orchard or who buy bags of apples that petitioner picked and bagged. The farm activity has never generated a profit.

In 1995, petitioner reported $3,833 in gross income and $42,938 in expenses for his farm activity. Petitioner claimed a loss of $39,105. Respondent allowed the expenses to the extent they offset the income and disallowed the loss of $39,105. Petitioner and respondent agree that the mortgage interest of $17,291 and the property taxes of $5,544 claimed on the Schedule F are properly deducted as itemized deductions on Schedule A as expenses for a second home. The remaining expenses at issue total $16,270 ($39,105 loss less $17,291 mortgage interest less $5,544 property taxes).

Section 183(a) disallows any deductions attributable to activities not engaged in for profit except as provided under section 183(b). Taxpayers need not have a reasonable expectation of profit. However, the facts and circumstances must demonstrate

that they entered into the activity, or continued the activity, with the actual and honest objective of making a profit. Taube v. Commissioner, 88 T.C. 464, 478 (1987); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. The taxpayer's motive to make a profit must be analyzed by looking at all the surrounding objective facts. Id. at 645. These facts are given greater weight than petitioner's mere statement of intent. Dreicer v. Commissioner, supra.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of relevant factors which should be considered in determining whether the taxpayer has the requisite profit objective. The factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs. These factors are not applicable or appropriate in every case. Abramson v. Commissioner, 86 T.C. 360, 371 (1986).

In determining whether petitioner was engaged in the apple

and timber activity with the requisite intent to make a profit, all of the facts and circumstances of his situation must be taken into account. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a) and (b), Income Tax Regs. No single factor is controlling, nor is the existence of a majority of factors favoring or disfavoring a profit objective necessarily controlling. Hendricks v. Commissioner, 32 F.3d 94, 98 (4th Cir. 1994), affg. T.C. Memo. 1993-396; sec. 1.183-2(b), Income Tax Regs.

We first consider the manner in which the taxpayer carries on the activity. In this case, petitioner never had a written business plan. He did not separate the expenses between the apple and timber portions of the activity. Petitioner did not prepare budgets with respect to the activity. We have no evidence regarding the number of trees petitioner planted, the cost of such trees, or the condition of the trees. Petitioner did not carry on the activity in a businesslike manner.

We consider the expertise of the taxpayer or his advisers. Petitioner does not appear to have any previous farming experience. Petitioner said that he became involved in the farm activity because he was interested in preserving old varieties of apple trees. It was a local wood cutter who suggested that petitioner could sell his timber. Prior to starting the apple and timber activity, petitioner did not consult any experts in this activity. Petitioner later consulted with outside

agronomists.  He has paid for consultations regarding the property.  Petitioner also regularly read magazines relating to agriculture.  Petitioner has professional companies come to his property to prune the trees.  If a tree dies, petitioner does not have someone come and determine the cause.  It appears that petitioner does not have expertise in regards to farming and consults experts only occasionally.

We consider the time and effort expended by the taxpayer in carrying on the activity.  An intent to derive a profit may be demonstrated by a taxpayer who devotes much of his personal time and effort to the activity, a taxpayer who withdraws from another occupation to devote most of his energies to the activity, or a taxpayer who devotes a limited amount of time but employs competent and qualified people to carry on the activity.  Sec. 1.183-2(b)(3), Income Tax Regs.  Petitioner is an attorney who operates two law offices.  He usually goes to the farm on Thursday and comes back on Saturday or Sunday.  He has conceded that the home on the farm property is a second home.  He estimates that he spends one full day a month on farming activities.  He has no full-time help.  On the whole, petitioner expends only minimal time and effort on the farm activity.

We consider the taxpayer's expectation that assets used in the activity may appreciate in value.  If land is purchased or held primarily with the intent to profit from the increase in its value, and the taxpayer also engages in farming on the land, the farming and the holding of the land will ordinarily be considered

a single activity only if the farming activity reduces the net cost of carrying the land for its appreciation in value. Sec. 1.183-1(d)(1), Income Tax Regs. Therefore, the farming and holding of the land will be considered a single activity only if the income derived from farming exceeds the deductions attributable to the farming activity which are not directly attributable to the holding of the land such as mortgage interest and property taxes. Sec. 1.183-1(d)(1), Income Tax Regs.

Petitioner paid roughly $1,250 an acre for his property. Similar property across the street from petitioner's property sold for $20,000 an acre. Undoubtedly, petitioner's land has appreciated in value. However, the claimed farming expenses exceed the profit from farming by $16,270, even after making the adjustments described above. Therefore, the farming activity is to be considered separately from the holding of the land for appreciation. Zdun v. Commissioner, T.C. Memo. 1998-296, affd. without published opinion 229 F.3d 1161 (9th Cir. 2000). Petitioner argues that we should consider the revenue from the sale of the trees 20 years from now. Petitioner estimated that a black walnut tree could sell for $3,000 to $4,000 per tree and that he has thousands of trees. He provided no witnesses as to the value of the trees in 20 years and was inexact about the number of trees he owned. Nevertheless, we believe the trees have some value and take that into consideration.

We consider the success of the taxpayer in carrying on other similar or dissimilar activities. There is no evidence that

petitioner has engaged in this type of activity before.

We consider the taxpayer's history of income or losses with respect to the activity. Petitioner's farming activities have not generated a profit since their inception in 1979. In 1993, 1994, and 1995, petitioner's reported farming expenses were $49,876, $42,218 and $49,938, respectively, and farming income was $3,373, $3,372, and $3,833, respectively. Even if we exclude the deductions for mortgage interest and property taxes that were properly reportable on Schedule A, the expenses for all three years greatly exceed the income.

We consider the amount of occasional profits, if any, which are earned. Substantial profit, though only occasional, is generally indicative of a profit objective if the losses are comparatively small. Sec. 1.183-2(b)(7), Income Tax Regs. As we have set forth above, petitioner has a history of losses. Petitioner contends that he will make more than enough revenue from the sale of the trees to cover the farming expenses incurred over the 40 year growing period. The evidence presented to substantiate this contention is minimal. Moreover, petitioner has yet to sell a single tree even though some of the trees must have reached maturity during the past 20 years, because the forest was already in existence when petitioner bought the property. Nonetheless, we find that the trees are of increasing value, and we take that into consideration.

We consider the financial status of the taxpayer. "Substantial income from sources other than the activity

(particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved."  Sec. 1.183-2(b)(8), Income Tax Regs.  Petitioner had $144,787 in gross receipts from legal services.  On his return, he reported $61,321 of business income from the law offices and $44,369 of capital gain.  Obviously, petitioner does not rely on his farm activity for income.  The income from petitioner's law practice gives petitioner the means to wait for the trees to grow.  The losses from the activity generate substantial tax benefits for petitioner.  In addition, he benefits from the recreational elements involved in visiting his second home every weekend.

We consider whether there are elements of personal pleasure or recreation.  "The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved."  Sec. 1.183-2(b)(9), Income Tax Regs. Petitioner travels to his second home in the mountains every weekend and spends up to 3 days in that home.  He claims he spends the equivalent of 1 day a month on activities allegedly related to the apples and timber.  When he purchased the property he did not plan on using it to grow timber.  As petitioner admits, the property was purchased primarily for recreational reasons; i.e., for use as a second home.

Petitioner mainly relies upon the argument that after the

trees have matured 40 years he will make more than enough money to cover the expenses he has incurred. While this may or may not be true, that contention alone does not turn this activity into a business. Petitioner is merely waiting while the trees appreciate in value. We would expect someone who operates a timber farm for profit to keep records regarding the specifics of the trees, such as the date the trees were planted and the cost of the trees that were planted, along with a business plan and records of expenses. Experts would be consulted prior to engaging in the activity and used thereafter as needed. A farm would have employees to maintain and care for the trees. Petitioner would have to spend more than one day a month on farm activities if he had no employees. A timber farm normally would not have a vacation house located on the property.

Factors that would tend to establish that a timber farm is entered into for profit are clearly shown in Kurzet v. Commissioner, T.C. Memo. 1997-54, affd. in part and revd. in part 222 F.3d 830 (10th Cir. 2000). In contrast, to describe the amount of time and energy petitioner has put into the apple and timber farm as an "activity" is generous. At the most, petitioner has an investment. We also note that petitioner deducted personal expenses for telephone, painting, and cleaning services on the Schedule F. These are nondeductible under section 262. When taken in conjunction, all of these factors we have reviewed establish that petitioner does not have a profit objective for the apple and timber activity. Petitioner did not

operate the farm with an intent to make a profit. Accordingly, we sustain respondent's determinations with regard to the farm expenses remaining in issue.

Petitioner's residence is in the front house of three units on his property. There are two smaller units in the backyard which he rents. Petitioner testified that his house is about 950 square feet and that the rental units are 650 and 350 square feet. Petitioner resides in his house for about 4 days of the week. He allocated the expenses which he claims are related to all three houses, one-third to his personal residence and two-thirds to the rental units. Respondent did not question the proposition that all the expenses related to all three units.

On his Schedule E, petitioner reported $7,866 of gross rents and deducted $16,910 of expenses, which resulted in a loss of $9,044. The $16,910 of claimed deductions on the Schedule E were expenses pertaining to petitioner's personal residence and expenses pertaining to the rental units. Respondent allowed the deduction of the full amount of taxes and interest deducted, $757 and $11,699, respectively. The remaining expenses which petitioner deducted were $1,449 for insurance, $1,204 for utilities, $1,362 for depreciation, $369 for gardening, and $70 for miscellaneous. These total $4,454, and respondent disallowed $3,712 of that amount.

Respondent's position is that petitioner's apportionment is not reasonable. Upon our own consideration of the record, we find that petitioner is entitled to deduct 40 percent of the

insurance, utilities, depreciation, and miscellaneous expense. Petitioner is not entitled to deduct the gardening expense. Because petitioner deducted two-thirds of the total expenses, total expenses (excluding gardening expenses) equal $6,128. Forty percent of that amount is $2,487, the amount deductible by petitioner. As mentioned, the rental activities are passive.

To the extent that we have not addressed any of the parties' arguments, we have considered them and conclude they are irrelevant or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.