T.C. Summary Opinion 2003-8

UNITED STATES TAX COURT

JAMES J. HOGAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9886-01S.                    Filed February 3, 2003.

<u>Thomas F. Hewner</u>, for petitioner.

<u>Jennifer S. McGinty</u>, for respondent.

PAJAK, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, section references are to the Internal Revenue Code in
effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.

Respondent determined deficiencies of $10,929 and $9,778 in petitioner's 1996 and 1997 Federal income taxes, respectively. This Court must decide (1) whether petitioner engaged in a bed and breakfast activity for profit within the meaning of section 183 and (2) whether petitioner is entitled to head of household filing status.

Some of the facts in this case have been stipulated and are so found. Petitioner resided in Killbuck, New York, at the time he filed his petition.

In 1977, petitioner built a house at 6161 Sullivan Hollow, Killbuck, New York, 14748 (Sullivan Hollow residence). The Sullivan Hollow residence has six bedrooms, three full baths, a living room, kitchen, dining room, deck, hot tub, and two satellite television systems. Petitioner and his then-wife jointly held title to the Sullivan Hollow residence and lived there with their four children. Petitioner and his then-wife divorced in 1992. In 1993, petitioner purchased his former wife's interest in the Sullivan Hollow residence.

During the taxable years in issue, petitioner worked full-time as an elementary school principal. Petitioner's job as a principal required him to work for 11 months annually.

In 1994, petitioner started what he termed The Camelot Inn Bed & Breakfast (Camelot Inn) at the Sullivan Hollow residence. During 1996 and 1997, petitioner and his then-fiancé, Mary Ann

Hughes (Ms. Hughes), worked at the Camelot Inn. During the taxable years in issue, Ms. Hughes worked full-time as a school psychologist. Ms. Hughes had a house in Allegany, New York, and resided in the house with her son. Petitioner lived in Ms. Hughes' Allegany house during the years in issue.

Petitioner reported income and expenses from the bed and breakfast activity on his individual Federal tax returns for the taxable years 1994 through 1997 on Schedules C, Profit or Loss From Business, as follows:

| Tax Year | Gross Income Reported | Total Expenses Claimed | Total Losses Claimed |
|---|---|---|---|
| 1994 | $152 | $26,284 | $26,132 |
| 1995 | 3,872 | 38,909 | 35,037 |
| 1996 | 2,325 | 57,457 | 55,132 |
| 1997 | 5,254 | 53,223 | 47,969 |

Additionally, for the taxable years 1996 and 1997 petitioner reported zero income in each year and claimed losses of $1,384 and $1,065, respectively, on Schedules F, Profit or Loss From Farming, with respect to beef cattle activity. Petitioner did not own any cattle in either 1996 or 1997. Petitioner also claimed losses for the taxable years 1994 and 1995 of $3,198 and $4,040, respectively, with respect to beef cattle activity, on his Schedules F. Petitioner also reported income of $185 and claimed a loss of $824 in 1997 with respect to a woodworking activity. The record is otherwise silent about this activity.

On his 1996 and 1997 Federal tax returns, petitioner claimed

head of household filing status based on his claim that he provided a household for his daughter Jamie. Jamie was born on April 16, 1977. During 1996 and 1997, Jamie was a full-time student at Penn State University. During these years, Jamie remained at Penn State University for the summer months as a participant in the ROTC program.

Respondent determined that the Camelot Inn was not an activity engaged in for profit within the meaning of section 183. For the taxable years 1996 and 1997, respondent disallowed the deductions for Schedule C expenses claimed by petitioner with respect to the bed and breakfast activity of $57,457 and $53,223, respectively. Respondent allowed petitioner Schedule A deductions for taxes which had been claimed on his Schedules C of $1,810 and $4,568 for 1996 and 1997, respectively, plus an additional deduction in 1996 of $3,545 for State taxes withheld. Respondent also allowed petitioner Schedule A deductions for mortgage interest which had been claimed on his Schedules C in 1996 and 1997 of $6,744 and $6,368, respectively. Respondent allowed miscellaneous deductions of $958 and $3,880, for 1996 and 1997, respectively, for the remaining expenses deducted on his Schedules C. Respondent also determined that petitioner did not qualify for head of household filing status for the taxable years in issue.

On his Schedules C, petitioner claimed total deductions, as follows:

|                          | 1996    | 1997    |
|--------------------------|---------|---------|
| Advertising              | $3,324  | $2,849  |
| Car and truck            | 6,673   | 5,772   |
| Depreciation             | 13,303  | 13,176  |
| Insurance                | 2,791   | 1,374   |
| Interest                 |         |         |
|   Mortgage               | 6,744   | 6,368   |
|   Other                  | 3,726   | 3,442   |
| Legal and professional   |         |         |
|   services               | 3,686   | 4,047   |
| Office expense           | 109     | 396     |
| Repairs and maintenance  | 8,720   | - 0 -   |
| Supplies                 | - 0 -   | 2,510   |
| Taxes and license        | 1,810   | 4,568   |
| Travel/Meals             | 1,103   | 917     |
| Utilities                | 3,643   | 6,008   |
| Other expenses           | 1,825   | 1,796   |
|   Total                  | $57,457 | $53,223 |

It appears from an examination of these deductions that many of them were personal, nondeductible expenses. Sec. 262. For instance, petitioner admitted that he did not use an attorney in the day-to-day operations of the bed and breakfast. Petitioner claimed that there were a "lot of other issues that came up where my ex-wife was attacking my use of the property as a bed and breakfast." As stated, petitioner had purchased his former wife's interest in the property prior to the start of the bed and breakfast activity. He deducted part of these legal expenses on his Schedules C.

At trial, respondent asserted that "petitioner's bed and breakfast activity was a homegrown tax shelter to shelter his W-2

income."  A review of the record proves this to be an accurate assessment.  In addition, during 1996 and 1997, petitioner owned no beef cattle, reported no income from beef cattle, yet claimed losses of $1,384 and $1,065 from beef cattle on his Schedules F. For 1997, petitioner claimed $824 additional losses on a second Schedule C from an alleged wood working activity.  Petitioner's use of various schedules on his returns shows that he had learned to use them as a tax cash cow.

Section 183(a) disallows any deduction attributable to activities not engaged in for profit except as provided under section 183(b).  Section 183(b)(1) allows those deductions which otherwise are allowable regardless of profit objective.  Section 183(b)(2) allows those deductions which would be allowable if the activity were engaged in for profit, but only to the extent that gross income attributable to the activity exceeds the deductions permitted by section 183(b)(1).  Section 183(c) defines "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

The basic standard for determining whether an expense is deductible under section 162 and 212 (and thus not subject to the limitations of section 183) is the following:  a taxpayer must show that he or she engaged in or carried on the activity with an actual and honest objective of making a profit.  Ronnen v.

Commissioner, 90 T.C. 74, 91 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). While a taxpayer need not have a reasonable expectation of profit, the facts and circumstances must demonstrate that he or she entered into the activity, or continued the activity, with the actual and honest objective of making a profit. Taube v. Commissioner, 88 T.C. 464, 478 (1987); Dreicer v. Commissioner, supra at 645. The taxpayer's objective to make a profit must be analyzed by looking at all the surrounding facts. Dreicer v. Commissioner, supra at 645. These facts are given greater weight than the taxpayer's mere statement of intent. Id.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of relevant factors which should be considered in determining whether the taxpayer has the requisite profit objective. The factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure

- 8 -

or recreation. Sec. 1.183-2(b), Income Tax Regs.  These factors are not applicable or appropriate in every case.  Abramson v. Commissioner, 86 T.C. 360, 371 (1986).  The facts and circumstances of the case in issue remain the primary test.  Id.

In determining whether petitioner was engaged in the bed and breakfast activity with the requisite intent to make a profit, all of the facts and circumstances of his situation must be taken into account.  Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a) and (b), Income Tax Regs.  No single factor is controlling, nor is the existence of a majority of factors favoring or disfavoring a profit objective necessarily controlling.  Hendricks v. Commissioner, 32 F.3d 94, 98 (4th Cir. 1994), affg. T.C. Memo. 1993-396; sec. 1.183-2(b), Income Tax Regs.

Petitioner generally bears the burden of proof with respect to this determination.  Rule 142(a); Golanty v. Commissioner, supra at 426; McCarthy v. Commissioner, T.C. Memo. 2000-135. Petitioner does not argue the applicability of section 7491(a), and the record does not reflect that section 7491(a) applies.

We first consider the manner in which the taxpayer carries on the activity.  The fact that a taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate a profit objective. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-

2(b)(1), Income Tax Regs.

Petitioner maintained a separate bank account for the Camelot Inn. Petitioner had some books and records of his activity. Petitioner filed a "Business Certificate" with the Cattaraugus County Clerk to certify that he was doing business as the Camelot Inn. While the maintenance of accurate records is necessary for the purpose of substantiating deductions, record keeping alone is not enough.

Petitioner also provided a document titled "The Camelot Inn Bed and Breakfast Business Plan". This is not a business plan. This is more accurately titled on the second page as a "History and Description of the Business". Petitioner's so-called "business plan" established no business goals for the Camelot Inn. Petitioner did not keep the type of records which could be used to increase the profitability of a business. Petitioner never prepared budgets or market projections which would outline strategies for ensuring a profitable business venture and making informed business decisions on a periodic basis. Such lack of information upon which to make educated business decisions tends to belie a taxpayer's contentions that an activity was pursued with the primary objective of making a profit. Dodge v. Commissioner, T.C. Memo. 1998-89, affd. without published opinion 188 F.3d 507 (6th Cir. 1999).

Petitioner never ascertained how or when he would make a profit or how he could change his operating methods to improve

his profitability. To begin with, petitioner stated that his location "was one mile off Route 417 on a side road called Sullivan Hollow, which pretty much meant that I wasn't going to get drive by business." Petitioner testified that he "cut back quite a bit on advertising" and reduced the price charged for the rooms. Petitioner's ads were attractive but did not display his building, apparently because his bed and breakfast building would not compare favorably with other bed and breakfast buildings which were pictured in the other ads he offered into evidence. We note that none of the changes made by petitioner, in essence to reduce losses and control costs, had any material effect. Petitioner continued to incur sizeable losses. Thus, we find petitioner did not carry on the activity in a businesslike manner. We conclude that this factor is not indicative of the requisite profit objective.

We consider the expertise of the taxpayer. A taxpayer's expertise, research, and study of an activity, as well as his consultation with experts, may be indicative of a profit objective. Sec. 1.183-2(b)(2), Income Tax Regs. Prior to operating the Camelot Inn, petitioner served as a chef in the United States Army. Ms. Hughes worked during college as a housekeeper and receptionist at a motel. Petitioner belonged to the Cattaraugus County Tourism Bureau and the National Bed and Breakfast Association. However, petitioner testified that he had no prior experience operating a bed and breakfast. Prior to starting the bed and breakfast, petitioner did not consult

experts.  Nor did petitioner consult with business experts during the regular course of operations for the bed and breakfast.  It appears over the course of the activity that petitioner gained little expertise regarding the business aspects and profitability of a bed and breakfast activity.  Petitioner claimed he went into the bed and breakfast activity to cover his additional expenses from his divorce, yet he only had losses.  We conclude that this factor is not indicative of a profit objective.

We consider the time and effort expended by the taxpayer in carrying on the activity.  An intent to derive a profit may be demonstrated by a taxpayer who devotes much of his personal time and effort to the activity, a taxpayer who withdraws from another occupation to devote most of his energies to the activity, or a taxpayer who devotes a limited amount of time but employs competent and qualified people to carry on the activity.  Sec. 1.183-2(b)(3), Income Tax Regs.

During the taxable years in issue, petitioner worked full-time as an elementary school principal.  Petitioner's official workday was from 8 a.m. to 4 p.m.  Petitioner would also have early morning meetings and after-school activities.  Petitioner stated that his work days as principal varied but that there were "times I'd feel like I was putting in a 16 hour day."  During the 1997 taxable year, petitioner also claimed he operated a woodworking business.  Ms. Hughes was also employed full-time as a school psychologist.  Petitioner does not contend that any other individuals were employed by the Camelot Inn.  Most

important is that petitioner generally participated in the bed and breakfast activity only when he was not at his full-time job as a school principal.  On the whole, in addition to petitioner's full-time occupation and other business activities, petitioner expended only minimal time and effort on the bed and breakfast activity.  We conclude that this factor is not indicative of a profit objective.

We consider the taxpayer's expectation that assets used in the activity may appreciate in value.  The term "profit" encompasses appreciation in the value of assets used in the activity.  Sec. 1.183-2(b)(4), Income Tax Regs.  Accordingly, a profit objective may be inferred even where there are no operating profits, so long as the appreciation in value of the activity's assets exceeds its operating expenses of the current year and its accumulated losses from prior years.  Golanty v. Commissioner, 72 T.C. at 427-428.

Petitioner argues that he expects the Camelot Inn's primary asset, the residence, to appreciate in value.  Petitioner offered a residential appraisal that the market value of the Sullivan Hollow residence was $115,000 as of August 31, 1994.  Petitioner offered no evidence of the market value of the residence as of the years in issue.  Based on an appraisal, the market value of the Sullivan House residence as of April 18, 2002, was $260,000.  Petitioner's accumulated losses from 1994 through 1997 year total $164,270.  Assuming that the residence appreciated in value each year from 1994 through 2002, then the accumulated losses of the

Camelot Inn through 1997 exceeded the residence's appreciation in value at that time.  The goal must be to realize a profit in the entire operation.  Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).  Petitioner testified that he purchased the residence from his ex-wife because "First of all, the land that this house is built on has been in my family since about 1840.  Second of all, I constructed the home myself literally with hammer and nails."  Petitioner did not purchase the Sullivan Hollow residence for speculative appreciation.  Consequently, we conclude this factor weighs against finding a profit objective.

We consider the taxpayer's success in carrying on other similar or dissimilar activities.  We have recognized that a taxpayer's success in other business activities may indicate a profit objective.  Hoyle v. Commissioner, T.C. Memo. 1994-592; sec. 1.183-2(b)(5), Income Tax Regs.  Petitioner purportedly conducted several other business activities prior to, and during, the time he operated the bed and breakfast activity.  During the years 1994 through 1997, petitioner, who had no cattle, allegedly was engaged in a beef cattle activity.  With respect to that activity, petitioner reported losses of $3,198, $4,040, $1,384, and $1,065, respectively, for those years on his Schedules F.  In 1994, petitioner reported an $8,167 loss with respect to an asbestos and radon abatement activity.  Petitioner reported a profit of $1,838 with respect to the asbestos and radon abatement activity in 1995.  In 1997, petitioner reported an $824 loss with

respect to a woodworking activity. We conclude that the largely unsuccessful results from petitioner's other purported activities do not indicate a profit objective.

We consider the taxpayer's history of income or losses with respect to the activity. A history of losses over an extended period of time may indicate the absence of a profit objective. Allen v. Commissioner, 72 T.C. 28, 35 (1979); sec. 1.183-2(b)(6), Income Tax Regs. The magnitude of the activity's losses in comparison with its revenues is an indication that the taxpayer did not have a profit objective. Dodge v. Commissioner, T.C. Memo. 1998-89, affd. without published opinion 188 F.3d 507 (6th Cir. 1999). In this case, petitioner's losses in comparison with his revenues are substantial. No profits have ever been generated from petitioner's bed and breakfast activity, and none are expected in the near future. This factor weighs against finding a profit objective.

We consider the amount of occasional profits, if any, which are earned. If an activity generates only small, infrequent profits and typically generates large losses, the taxpayer conducting the activity may not have a profit objective. Sec. 1.183-2(b)(7), Income Tax Regs. In this context, profit means economic profit, independent of tax savings. Seaman v. Commissioner, 84 T.C. 564, 588 (1985). As we have set forth above, petitioner has a history of substantial losses. There is no indication from the record that petitioner can realistically expect profitability in the near future. This factor weighs

against finding a profit objective.

We consider the financial status of the taxpayer. Substantial income from sources other than the activity in question, particularly if the losses from the activity generate substantial tax benefits, may indicate that the activity is not engaged in for profit. Hillman v. Commissioner, T.C. Memo. 1999-255; sec. 1.183-2(b)(8), Income Tax Regs. During the taxable years 1996 and 1997, petitioner reported unrelated gross income of $67,414 and $65,295, respectively. During the same years, petitioner reported Schedule C losses from the bed and breakfast activity of $55,132 and $47,969, respectively. Petitioner used these losses to reduce his gross income by 82 percent for 1996 and 74 percent for 1997. These reductions led to substantial tax savings for petitioner. Consequently, this factor weighs against a finding of a profit objective.

Given due consideration to the record as a whole, we find that during the taxable years in issue petitioner did not operate the bed and breakfast activity with an intent to make a profit. Accordingly, we sustain respondent's disallowance of petitioner's Schedule C deductions.

We next consider whether petitioner is entitled to head of household filing status for 1996 and 1997. Petitioner contends that he maintained a household for his daughter Jamie during the taxable years 1996 and 1997. Respondent determined that petitioner's proper filing status for the taxable year at issue

is single.

Section 2(b), in relevant part, defines head of household as an unmarried taxpayer who maintains as his home a household which constitutes for more than one-half of such taxable year the principal place of abode of a person who is an unmarried son or daughter of the taxpayer. Sec. 2(b)(1)(A)(i). The term "principal place of abode" is synonymous with "home". Sec. 1.2-(2)(c)(1), Income Tax Regs. A taxpayer shall be considered as maintaining a household only if he pays more than one-half the costs of the household. Sec. 1.2-2(d), Income Tax Regs. The costs of maintaining a household include property taxes, mortgage interest, rent, utility charges, upkeep and repairs, property insurance, and food consumed on the premises. Id.

During the taxable years at issue, Jamie was a full-time student at Penn State University. In 1996 and 1997, Jamie remained at college during the summer months as a participant in the ROTC program. Petitioner testified that "for the most part [Jamie] wasn't in the area at all. She was away at college." Petitioner, although unmarried during the taxable years in issue, has not met the requirements to file as head of household. Petitioner lived in Ms. Hughes' residence during the years in issue. Petitioner testified that he paid weekly child support to his former wife during the taxable years in issue. Petitioner did not offer evidence that he provided more than one-half the costs of maintaining a household for himself and Jamie.

Petitioner did not provide any evidence of the total annual costs of maintaining a household for himself and Jamie. Accordingly, we sustain respondent's determination with respect to this issue.

To the extent that we have not addressed any of the parties' arguments, we have considered them and conclude they are irrelevant or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered for respondent.