T.C. Memo. 2004-215


UNITED STATES TAX COURT


JANE FREED, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11387-01.          Filed September 23, 2004.


<u>William F. Rigsby</u>, for petitioner.

<u>Ronald T. Jordan</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1996 of $64,213 and an accuracy-related penalty under section 6662(a)[1] of

---

[1]All section references are to the Internal Revenue Code for the year at issue unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.

$409.  After concessions,[2] the sole issue for decision is whether petitioner operated her thoroughbred horse breeding and racing activities for profit in 1996.  We hold that she did not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference.  Petitioner resided in Elberon, New Jersey, at the time she filed the petition.

I.  Petitioner

Petitioner was engaged in thoroughbred horse breeding and racing activities from the early 1980s through 1996, the year at issue.  She acquired her first horse, a riding horse, after she married her first husband in 1949.  At some point before her second marriage, she acquired a steeplechase horse for showing. She was first introduced to thoroughbred horses when she operated her second husband's unprofitable thoroughbred horse activities in the 1960s.  She began active thoroughbred horse breeding activities in 1982, and racing activities in 1984.

Petitioner's herd has varied over the years in quantity and ratio of breeding horses to racing horses.  Petitioner's 1996

_____

[2]Petitioner conceded she was not entitled to $7,302 in charitable contribution deductions because she failed to present evidence to substantiate the deduction.  Petitioner also failed to present any evidence or arguments regarding the accuracy-related penalty under sec. 6662(a).  This issue is deemed conceded.

herd consisted of three breeding horses and eight racing horses. Petitioner's breeding herd is stabled at McMahon of Saratoga Thoroughbreds Farm (McMahon Farm). Petitioner's racing herd is boarded at various tracks where they race, which is standard practice for racing thoroughbreds. The horses race exclusively in New York State. She visits her horses in person only three to four times per year. She most often watches her horses race via closed circuit simulcast in New Jersey. She never had any of her thoroughbred horses appraised.

Petitioner's educational background consists of a bachelor's degree in anthropology that she received from Monmouth College in 1981. Her employment history consists of a lab technician's position for an archeologist as well as a position as an instructor at an archeology field school between 1981 and 1983.

Petitioner is the beneficiary of three trusts holding assets with a total value of approximately $6 million. The trusts were funded by petitioner's inheritance from her mother. Petitioner derives her primary income from dividends and interest received from the trusts. From 1985 through 1996, she received over $3.2 million of income from the trusts--over $200,000 in 1996 alone. Petitioner did not make a profit from her thoroughbred horse breeding and racing activities in any year between 1982 and 1996. Her losses during that time totaled over $1.1 million.

## II.  Petitioner's Advisers

Petitioner consulted with various advisers in conducting her thoroughbred horse breeding and racing activities.  She employed a professional breeding manager, professional trainers, and a certified public accountant (CPA).

Petitioner employed Joseph McMahon (McMahon) as her breeding manager from the time she began her breeding activities in 1982 through 1996, the year at issue.  He is the operator of McMahon Farm, located in Saratoga, New York, approximately 255 miles from petitioner's residence in New Jersey.  McMahon Farm has approximately 500 acres, boards between 150 and 300 horses, and employs 14 full-time employees year round.  It also occasionally retains the services of varying numbers of seasonal employees.  McMahon cared for the day-to-day needs of petitioner's breeding horses and maintained breeding records for the breeding horses.

Petitioner frequently consulted with McMahon and relied upon his advice regarding her thoroughbred horse breeding and racing activities.  He has approximately 90 thoroughbred horse breeding clients.  His farm produced Funny Cide, a gelding who won the Kentucky Derby and the Preakness Stakes in 2003.

Petitioner employed different training managers during the course of her thoroughbred horse breeding and racing activities.  These trainers were based in New York, Florida, and South Carolina.  Petitioner employed trainers in Southern States

because she felt the better weather and grass there gave her horses a training advantage when the racing season began in New York.

Richard Mahon (Mahon) is a CPA licensed in New Jersey. Petitioner has employed Mahon to perform record keeping for her thoroughbred horse breeding and racing activities since approximately 1982, and he has many other clients who raise horses. These records were distinct from petitioner's personal financial records.

In 1996, Mahon prepared annual and semiannual Statements of Income Collected and Expenses Paid for petitioner's thoroughbred horse breeding and racing activities. Each statement included results from the prior year for purposes of comparison.

Mahon provided other services to petitioner in 1996 as well as in previous years. He prepared miscellaneous ledgers, maintained other records in connection with petitioner's thoroughbred horse breeding and racing activities, and prepared petitioner's Federal and State income tax returns. Petitioner did not prepare nor did she have prepared balance sheets, financial projections, or budgets in connection with her thoroughbred horse breeding and racing activities for any year in which she engaged in the activities.

Petitioner read various horse industry publications including Blood Horse and Thoroughbred Times. In addition, petitioner daily checked race results in newspapers.

III. New York Breeder's Program

New York State offers an incentive program to induce thoroughbred horse owners to conduct their breeding and racing activities in New York. Under the program, owners of winning horses receive the full purse due each winning horse owner. In addition, the owners of the winner's parents, if the winner was foaled in New York, receive 20 percent of the winner's race winnings.

Petitioner has participated in the program since she began her thoroughbred horse breeding and racing activities. During that time, the program's qualification restrictions eased. Breeders were allowed to engage out-of-State thoroughbreds with New York thoroughbreds and still qualify for the breeder's 20-percent payout. Subsequently, petitioner bred some of her mares with various out-of-State stallions.

IV. Petitioner's 1996 Tax Return

Petitioner timely filed her 1996 tax return in which she deducted expenses relating to her thoroughbred horse breeding and racing activities. Respondent issued a notice of deficiency to petitioner for 1996 in which respondent disallowed the deductions because petitioner did not engage in her thoroughbred horse

breeding and racing activities for a profit under section 183.
Petitioner timely filed a petition with this Court seeking
redetermination of the disallowed deductions.

OPINION

I. Whether Petitioner Operated Her Horse Racing and Breeding
   Activities for Profit in 1996

The sole issue for decision is whether petitioner operated
her thoroughbred horse racing and breeding activities for profit
in 1996 within the meaning of section 183. Section 183(a)
provides generally that if an individual engages in an activity
and "if such activity is not engaged in for profit, no deduction
attributable to such activity shall be allowed under this chapter
except as provided in this section." Deductions that would be
allowable without regard to whether the activity is engaged in
for profit shall be allowed under section 183(b)(1) and
deductions that would be allowable only if the activity is
engaged in for profit shall be allowed under section 183(b)(2),
but only to the extent that the gross income from the activity
exceeds the deductions otherwise allowable under section
183(b)(1).

We follow the Court of Appeals opinion squarely in point
where appeal from our decision would lie absent stipulation by
the parties to the contrary. Golsen v. Commissioner, 54 T.C. 742
(1970), affd. 445 F.2d 985 (10th Cir. 1971). Because petitioner
resides in the Third Circuit, petitioner has the burden of

proving that she conducted her activities with the actual and honest intent to make a profit. See Purdey v. Commissioner, T.C. Memo. 1989-657, affd. without published opinion 922 F.2d 833 (3d Cir. 1990).

Although section 7491(a) places the burden of proof on the Commissioner with regard to certain factual issues involving examinations commenced after July 22, 1998, which this case was, petitioner does not assert that section 7491(a) shifts the burden to respondent. Therefore, the burden of proof remains with petitioner.

Whether a taxpayer has an actual and honest profit objective is determined on the basis of all surrounding facts and circumstances. Dreicer v. Commissioner, 78 T.C. 642 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(b), Income Tax Regs. We give greater weight to objective facts than to a taxpayer's statements of intent. Dreicer v. Commissioner, supra; sec. 1.183-2(a), Income Tax Regs.

We structure our analysis around nine nonexclusive factors. Sec. 1.183-2(b), Income Tax Regs. The nine factors are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying

on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.  Id.

Before we analyze the nine factors, we note that petitioner urges us to place the greatest weight on the first three factors because several periodical articles suggest a correlation between satisfying the first three factors and the outcome of the case. The articles conclude that taxpayers who meet the first three factors generally prevail in their cases and those who do not meet any of the first three factors generally lose.  We fail to see the correlation and are not bound by the conclusions in the articles.  No factor or set of factors is controlling, nor is the existence of a majority of factors favoring or disfavoring a profit objective necessarily controlling.  Hendricks v. Commissioner, 32 F.3d 94, 98 (4th Cir. 1994), affg. T.C. Memo. 1993-396; Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); sec. 1.183-2(b), Income Tax Regs.  The individual facts and circumstances of each case are the primary test.  Abramson v. Commissioner, 86 T.C. 360, 371 (1986).

## II. Application of the Factors

### 1. The Manner in Which the Taxpayer Carried On the Activity

We begin by examining the manner in which petitioner carried on her thoroughbred horse breeding and racing activities. The fact that a taxpayer carries on the activity in a businesslike manner may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. In deciding whether a taxpayer conducted an activity in a businesslike manner, we consider whether accurate books were kept, whether the activity was conducted in a manner substantially similar to that of other for-profit activities of the same nature, and whether changes were made in an attempt to earn a profit. Ballich v. Commissioner, T.C. Memo. 1978-497; sec. 1.183-2(b)(1), Income Tax Regs.

Petitioner did not conduct her thoroughbred horse breeding and racing activities in a businesslike manner. Although she kept adequate records and employed a CPA to prepare a few financial statements, respondent argues, and we are persuaded, that she failed to make meaningful changes[3] in her method of operation despite a 14-year history of significant losses. Her enduring losses of this magnitude without making changes shows

---

[3]Petitioner changed trainers and adapted her breeding activities to adapt to qualifying criteria changes in the New York Breeders Program. These changes did not occur, however, until after 1996, the year in question. Accordingly, we place no weight on petitioner's argument that these changes were made to stem petitioner's losses before 1996.

that she did not conduct her thoroughbred horse breeding and racing activities in a businesslike manner.

2. <u>The Expertise of the Taxpayers or Their Advisers</u>

We next consider petitioner's expertise or the expertise of her advisers in her thoroughbred horse breeding and racing activities. Efforts to gain experience and a willingness to follow expert advice are considered in deciding whether a taxpayer has a profit objective. Sec. 1.183-2(b)(2), Income Tax Regs. Preparing for an activity by consulting with experts may indicate that a taxpayer has a profit motive if the taxpayer follows that advice. <u>Id.</u>

Petitioner asserts, and we agree, that both she and her advisers possess the requisite expertise in thoroughbred horse breeding and racing to indicate a profit motive. She herself has been involved with different aspects of the thoroughbred horse industry since the late 1960s, and she has been involved in her current capacity as an owner in the industry since the early 1980s.

Further, her advisers are experts in thoroughbred horse breeding and racing as well. Her breeding manager, McMahon, owns and operates a thoroughbred horse farm that produced Funny Cide, who won both the Kentucky Derby and the Preakness in the same year. Petitioner also employed professional trainers all over the country, and her CPA has handled the books for her

thoroughbred horse activities for 14 years and has many other clients who raise horses as well.

We place little weight on respondent's argument that petitioner lacks the requisite expertise because neither she nor her advisers are experts in the economics of thoroughbred horses. Petitioner does not need advanced training in economics to know that a thoroughbred horse that wins races is more valuable than one that does not. Petitioner's advisers have demonstrated an expertise in breeding and training winning thoroughbreds, and she has demonstrated a willingness to solicit and follow their advice.

3. The Time and Effort Expended by the Taxpayer in Carrying On the Activity

We next consider the time and effort petitioner expended in carrying on her thoroughbred horse breeding and racing activities. A taxpayer's devotion of much time and effort to conducting an activity, particularly if the activity does not involve recreational aspects, may indicate that he or she has a profit objective. Sec. 1.183-2(b)(3), Income Tax Regs.

Petitioner claims to have spent 10 to 20 hours per week on bookkeeping alone. In addition, she claims that she spent time reading industry-related publications as well as time talking to her breeding and training managers. Respondent counters that petitioner overstated the amount of time and points out that,

because petitioner lived in another State, she could not have devoted as much time to these activities as she claims.

We find that petitioner failed to corroborate her testimony. We are not required to accept petitioner's uncorroborated, self-serving testimony. See, e.g., <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 219-220 (1992); <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986).

Petitioner then analogizes this case to numerous other thoroughbred horse cases where the taxpayers dedicated comparable amounts of time to their activities. See, e.g., <u>Smith v. Commissioner</u>, 9 T.C. 1150 (1947); <u>Eisenman v. Commissioner</u>, T.C. Memo. 1988-467; <u>Appley v. Commissioner</u>, T.C. Memo. 1979-433. We decline to detail the distinctions between this case and each of these other cases. The potentially infinite combination of factors that affect this analysis makes it virtually impossible to analogize the importance of any one factor in relation to the others under different scenarios.

4. <u>The Expectation That the Assets Used in the Activity May Appreciate in Value</u>

We next examine the expectation that the assets used in petitioner's thoroughbred horse breeding and racing activities may appreciate in value. A taxpayer may intend, despite the lack of profit from current operations, that an overall profit will result when appreciation in the value of assets used in the activity is realized. <u>Bessenyey v. Commissioner</u>, 45 T.C. 261,

274 (1965), affd. 379 F.2d 252 (2d Cir. 1967); sec. 1.183-2(b)(4), Income Tax Regs.

Although petitioner contends she expected the assets to appreciate in value in light of her actions, petitioner failed to explain how she expected the sale of her thoroughbred horses and their offspring to recoup the over $1.1 million in losses she incurred over 14 years. She never had any of her thoroughbred horses appraised. In addition, nothing in the record demonstrates that any of the thoroughbred horses she sold commanded such a price that she could expect to overcome her history of losses.

5. The Success of the Taxpayer in Carrying On Other Similar or Dissimilar Activities

We next examine the success of petitioner in carrying on other similar or dissimilar activities. If a taxpayer has previously engaged in similar activities and made them profitable, this success may show that the taxpayer has a profit objective, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs.

Respondent claims that petitioner has never transformed an unprofitable enterprise into a profitable one. The evidence shows that petitioner's only other foray into thoroughbred horse activities was her second husband's unprofitable horse farm in the 1960s. Petitioner urges us to discount this factor because the professional journal articles upon which petitioner relies

did not find this factor determinative.  We decline petitioner's invitation.  It is for this Court to decide how much weight to attribute to each factor.

Petitioner admitted she had never earned a profit while she was involved with her previous thoroughbred horse activities.  We have found this as a fact.

6.  <u>The Taxpayer's History of Income or Loss With Respect to the Activity</u>

We next examine petitioner's history of income or loss with respect to the activity.  A history of substantial losses may indicate that the taxpayer did not conduct the activity for profit.  <u>Golanty v. Commissioner</u>, 72 T.C. 411, 427 (1979); sec. 1.183-2(b)(6), Income Tax Regs.  Losses during the initial stage of an activity do not necessarily indicate, however, that the activity was not conducted for profit.  <u>Engdahl v. Commissioner</u>, 72 T.C. 659 (1980); sec. 1.183-2(b)(6), Income Tax Regs.

Petitioner began her thoroughbred horse activities in 1982 and incurred losses of more than $1.1 million as of 1996, the year at issue.  Petitioner contends that we should disregard her history of losses because the small chance to earn a large profit may indicate an intent to earn a profit.

We find nothing in the record to support petitioner's claim. Petitioner never took any steps to put herself in position to earn the substantial profit necessary to recoup her previous losses.  She engaged in similar breeding patterns year after year

that failed to produce a foal capable of recouping the types of losses she incurred over the years. She also continued to race at tracks that she testified did not offer the chance for high payouts.

Petitioner explains away her substantial losses by arguing there were several unforeseen events that negatively affected her activities. These events include: (1) The death of one of her broodmares; (2) barren broodmares; (3) poor performance of racing thoroughbreds; and (4) negative economic conditions. We are not convinced that any of these circumstances are the type that should have caught petitioner by surprise.

Petitioner next urges the Court to ignore losses she incurred before 1991 because the Internal Revenue Service (IRS) examined her income tax return for 1991 and did not disallow the deductions she claimed for her thoroughbred horse breeding and racing activities. In effect, petitioner is asking us to ignore the pre-1991 losses because the IRS previously "approved" these losses. We decline petitioner's invitation because 1991 is not the year at issue in this case. The facts and circumstances in 1991 are different from those in 1996. Furthermore, even if it were the same year, a trial before this Court in a deficiency case is a proceeding de novo. We are not bound by the findings of an IRS audit. Casey v. Commissioner, 38 T.C. 357 (1962).

7. <u>The Amount of Occasional Profits, If Any, Which Are Earned</u>

We next consider the amount of occasional profits, if any, the taxpayer earned.  Occasional profits the taxpayer earned from the activity, in relation to the amount of losses incurred, the amount of the taxpayer's investment, and the value of the assets used in the activity provide useful criteria in determining the taxpayer's intent.  Sec. 1.183-2(b)(7), Income Tax Regs.

Petitioner contends that this factor should favor her because she showed a profit in 2001, 2002, and 2003 from her breeding activities.  We place no weight on these "profits".  We note that the "profit" in 2001 is due primarily to petitioner's capitalizing $70,000 of boarding costs that she had expensed in prior years.  If petitioner had treated the boarding costs in 2001 as she had in previous years, she would have shown a loss in 2001 as well.  Moreover, no evidence was produced to substantiate a profit in 2002 or 2003.

8. <u>The Financial Status of the Taxpayer</u>

We next examine petitioner's financial status.  If a taxpayer does not have substantial income or capital from sources other than the activity in question, it may indicate that the activity is engaged in for profit.  Sec. 1.183-2(b)(8), Income Tax Regs.  Conversely, substantial income from sources other than the activity, especially if the losses generate large tax

benefits, may indicate that the taxpayer is not conducting the activity for profit.  Id.

Petitioner contends that her financial status should have little significance because the amount she expended reduced her spendable income more than the benefit it provided in reducing her taxable income.  Her argument ignores that losses from one activity can provide a tax benefit if the losses shelter income from another source.  Petitioner is the beneficiary of a $6 million trust that provided her with over $3.2 million in income from 1985 through 1996, including over $200,000 in 1996.  During that same time, petitioner incurred and deducted over $1.1 million of losses from her thoroughbred horse activities. Petitioner does enjoy a tax benefit from her thoroughbred horse activity.

9.  Whether Elements of Personal Pleasure or Recreation Are Involved

We next examine whether elements of personal pleasure or recreation were involved in the activity.  The presence of recreational or pleasurable motives in conducting an activity may indicate that the taxpayer is not conducting the activity for profit.  Sec. 1.183-2(b)(9), Income Tax Regs.  A taxpayer's enjoyment of an activity does not show, however, that the taxpayer lacks a profit objective if the activity is, in fact, conducted for profit as shown by other factors.  Jackson v.

Commissioner, 59 T.C. 312, 317 (1972); sec. 1.183-2(b)(9), Income Tax Regs.

Petitioner contends that there were no elements of personal pleasure or recreation involved in her thoroughbred horse breeding and racing activities.  She did not live on a farm with a trophy house.  She never rode the horses.  In fact, she intentionally avoided contact with them to remain detached.  She saw the horses only three or four times a year.  There is no indication that she had any affection for any of the horses.

We find petitioner's intentional limited contact with her horses indicates minimal pleasure and recreation were involved.

10.  Conclusion

Considering all of the facts and circumstances of this case, we find that petitioner failed to prove that she engaged in thoroughbred horse breeding and racing activities with the actual and honest intent to earn a profit.  Accordingly, we sustain respondent's determination in the statutory notice of deficiency.

We have considered petitioner's other arguments and conclude they are irrelevant, moot, or meritless.

III.  Procedural Issue

We finally address a procedural matter.  Petitioner attached to her reply brief a copy of an article from an unknown source that discusses one of petitioner's thoroughbred horses.

Respondent made a motion to strike the attachment from the record as untimely.

Respondent's motion to strike will be granted.  The time for presenting evidence is at trial.  The parties may not introduce new evidence after the trial has concluded and the record closed. The Court does not try a case piecemeal.  Moreover, statements in briefs or in documents attached to briefs are not evidence and, accordingly are not considered by the Court as such.  Rule 143(b); Evans v. Commissioner, 48 T.C. 704, 709 (1967), affd. per curiam 413 F.2d 1047 (9th Cir. 1969); Chapman v. Commissioner, T.C. Memo. 1997-147; Berglund v. Commissioner, T.C. Memo. 1995-536.

An order will be issued granting respondent's motion to strike, and decision will be entered for respondent.