T.C. Summary Opinion 2007-208


UNITED STATES TAX COURT


FORREST JACKSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21845-05S.              Filed December 11, 2007.


Forrest Jackson, pro se.

Andrew M. Stroot and Warren P. Simonsen, for respondent.


JACOBS, Judge:[1]  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect

------

[1]Special Trial Judge Carleton D. Powell, to whom this case
was submitted, died on Aug. 23, 2007.  By order dated Aug. 30,
2007, the parties were directed to file, on or before Oct. 2,
2007, either a response consenting to the reassignment of this
case or a notice objecting to the reassignment together with a
motion for a new trial or a motion to supplement the record,
stating reasons in support of either motion.  On Oct. 2, 2007,
counsel for respondent filed a response consenting to the
reassignment of this case.  To date, petitioner has filed no
response.  After allowing ample time for petitioner to file a
response, the Chief Judge reassigned this case to Judge Julian I.
Jacobs for disposition on the existing record.

at the time the petition was filed.  Pursuant to section 7463(b),[2] the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $6,463 deficiency in petitioner's 2002 Federal income tax and a $123.10 addition to tax pursuant to section 6651(a)(1).  The issues for decision are:  (1) Whether petitioner conducted a trade or business as that term is used in section 162; (2) if so, whether petitioner satisfied the substantiation requirements for expenses relating to that trade or business; and (3) whether petitioner is liable for the addition to tax for failure to file a timely return under section 6651(a)(1).

<u>Background</u>

Some of the facts have been stipulated and are so found.  The stipulated facts and exhibits, as well as additional exhibits introduced at trial, are incorporated herein by this reference. At the time she filed the petition, petitioner resided in Herndon, Virginia.

During 2002, the year at issue, petitioner was a part-time employee of FedEx Express (FedEx), where she had worked since 1998.  FedEx issued petitioner Form a W-2, Wage and Tax Statement, for 2002 showing that she had earned wages of $42,355.39.

---

[2]Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue.

Petitioner filed her 2002 return, in which she described her occupation as "driver", on or about June 5, 2003. Petitioner reported the entire amount of her wages from FedEx on a Schedule C, Profit or Loss From Business, as gross receipts from a business activity, Packs to Go Business Solutions (Packs to Go), as opposed to wage income.[3] From those "gross receipts" petitioner subtracted $3,267 as "cost of goods sold" and $33,554 of "expenses",[4] and reported a "net profit" of $5,534. After further subtracting her standard deduction and personal exemption, petitioner reported no taxable income and requested a refund of the $2,616.52 of tax withheld by FedEx.[5]

---

[3]Petitioner now agrees that the income she received from FedEx should have been reported as wage income rather than as gross receipts from a business activity.

[4]The claimed expenses consisted of $800 for advertising, $1,750 for bad debts, $9,500 for car and truck expenses, $2,957 for depreciation, $697 for automobile insurance, $500 for legal and professional services, $1,050 for office expenses, $600 for rent or lease of vehicles, machinery, and equipment, $10,680 for rent or lease of other business property, $220 for repairs and maintenance, $410 for supplies, $50 for taxes and licenses, $1,339 for travel, $280 for meals and entertainment, $1,401 for utilities, $945 for wages, and $375 for other expenses described as "petty cash, tolls, vendor cash, promotional items."

[5]Petitioner filed a return for 2001 that was similar to the 2002 return. On Schedule C of that return, petitioner reported her $31,709 of wages from FedEx as gross receipts from a business activity and claimed deductions for expenses from the Packs to Go activity. For 2001, petitioner claimed a net loss of $761. Petitioner also filed a return for 2003, in which she reported her $45,000 of wages from FedEx as wage income and by means of a Schedule C claimed a $37,874 loss from the Packs to Go activity. Petitioner did not report any receipts from her Packs to Go
(continued...)

Petitioner's Packs to Go activity began in 1996 as a packing, shipping, and moving service.[6]  Petitioner had already been offering business management and consulting services.  In 2002, petitioner expanded her business activity to include "business prep, marketing, drawing up business plans, where to find start-up money, computer services and video recording services."  Packs to Go, according to the Schedule C petitioner prepared, employed the accrual method of accounting.

Respondent disallowed all of petitioner's claimed Schedule C deductions because, according to respondent, petitioner has not shown that Packs to Go was a trade or business for which petitioner is entitled to Schedule C deductions.  Continuing, respondent asserts that even if Packs to Go were an activity engaged in for profit, petitioner's claimed expenses were not adequately substantiated.

## Discussion

In general, section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  In order for an activity to be considered a trade or business for the purposes of

---

[5](...continued)
activity on Schedule C for either 2001 or 2003.

[6]It does not appear that any registration formalities were in place with respect to Packs to Go.  We infer from the record that the name Packs to Go was first employed in 1996 and encompasses all services available from petitioner.

section 162, the activity must be conducted with "continuity and regularity" and "the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

Section 183 precludes deductions for activities not engaged in for profit except to the extent of the gross income derived from those activities. Sec. 183(a) and (b)(2). Thus, deductions are not allowable for activities that a taxpayer carries on primarily for sport, as a hobby, or for recreation. Sec. 1.183-2(a), Income Tax Regs. For a taxpayer's expenses in an activity to be deductible under section 162, entitled "Trade or Business Expenses", or section 212, entitled "Expenses for Production of Income", and not subject to the limitations of section 183, a taxpayer must show that the taxpayer engaged in the activity with an actual and honest objective of making a profit. Hulter v. Commissioner, 91 T.C. 371, 392 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Hastings v. Commissioner, T.C. Memo. 2002-310. Whether a taxpayer has an actual and honest profit objective is a question of fact to be answered from all the relevant facts and circumstances. Hulter v. Commissioner, supra at 393; Hastings v. Commissioner, supra; sec. 1.183-2(a), Income Tax Regs. Greater weight is given to objective facts than to a taxpayer's mere

statement of intent.  Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

The regulations set forth a nonexhaustive list of factors that may be considered in deciding whether a taxpayer had a profit objective.  These factors are:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation. See sec. 1.183-2(b), Income Tax Regs.

No single factor, nor even the existence of a majority of factors favoring or disfavoring the existence of a profit objective, is controlling.  Hendricks v. Commissioner, 32 F.3d 94, 98 (4th Cir. 1994), affg. T.C. Memo. 1993-396; Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); sec. 1.183-2(b), Income Tax Regs.  Rather, the relevant facts and circumstances of the case are determinative. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Allen v.

Commissioner, 72 T.C. 28, 34 (1979); sec. 1.183-2(b), Income Tax Regs.

We do not believe in the case before us it is necessary to analyze each of the factors enumerated in section 1.183-2(b), Income Tax Regs. Rather, we shall focus only on those we believe most important. Our analysis leads us to conclude that petitioner's Packs to Go activity does not rise to the level of a trade or business as that term is used in section 162.

Petitioner did not have any gross receipts (much less make any profit) from her Packs to Go activity in 2001, 2002, or 2003. Nor does the record indicate that Packs to Go owned tangible assets or even possessed a bank account at any time. The following colloquy between Special Trial Judge Powell and petitioner during the trial indicates that Special Trial Judge Powell had difficulty accepting petitioner's assertion that Packs to Go was operated with the requisite "actual and honest objective of making a profit":

> The Court: And I'm not exactly sure I understand right now after listening for almost three hours what your business is.
>
> Ms. Jackson: Your Honor, my business is a--and again it's two-fold. It's the practical side of packing boxes because I see this every day for Federal Express, and this was one--as a driver, when we get a call to come to--
>
> The Court: But if you did that, you would have some income.
>
> Ms. Jackson: I would have income if people paid me, and if--

The Court:  Well, I'm willing to accept that you had a person that broke a contract, but were all three years people breaking contracts?

Ms. Jackson:  No, Your Honor, 2001 was a sort of turning point because I was trying to also introduce--I mean, I was doing this and also trying different things to generate money.  I tried.  I mean, I was trying different things to make this work.  That's why I was so ecstatic in 2002 when I secured a contract.

The Court:  Then the contract fell through.

Ms. Jackson:  The contract fell through, but I am--

The Court:  In 2003 you didn't have any income from this business.

Ms. Jackson:  Well, in 2003 I was deciding that I'm going to wrap this up, that, you know, I'm going to--that's why in 2004 I didn't do any packing and shipping or limited to just to see if I could sell the business, that I have enough goodwill.


Petitioner claims that she prepared advertising and promotional material for Packs to Go in the form of three "infomercials" recorded on compact discs, digital video discs, and videotapes.  These materials (the cost of which petitioner claimed as a business expense deduction) were prepared with the help of a former brother-in-law over the course of a single weekend.  In addition, petitioner claims that her nephew created and maintained a Web site for her Packs to Go activity.  These materials were not introduced into evidence; and there is no evidence, apart from petitioner's testimony that she conducted free seminars, of any other strategy or tactic that petitioner used in an effort to market her Packs to Go activity.

Petitioner claims that she conducted her Packs to Go activity from an apartment in a subsidized low-income housing development known as the Dulles Center Apartments. She claims she did not live there, an assertion that respondent disputes. Petitioner's apartment was furnished with dishes, plants, a sofa, a loveseat, two tables, and a coffee table.

Petitioner's lease agreement provided that "the use of the premises for any purpose other than as a private dwelling solely for the use of the Resident" was not permitted. The lease made no mention of petitioner's Packs to Go activity. Moreover, for the first year of the lease (from December of 1999 to December of 2000), petitioner's nephew was a signatory to the lease.

Without deciding whether petitioner did or did not live at the Dulles Center Apartments, and even if we were to accept petitioner's uncorroborated assertions that she conducted her Packs to Go activity from a low-income apartment unit in violation of her lease agreement, we believe that such a highly unusual arrangement is inconsistent with conducting a commercial enterprise in a businesslike manner.

Petitioner did not keep reliable books and records for her Packs to Go activity. Only one signed contract between petitioner and a putative client was introduced into evidence. The receipts that petitioner produced in support of her claims for various business deductions were inconsistent with or contradictory of her

testimony, or were simply generic receipts devoid of identifying information such as the name of the vendor or the provider of services.

Petitioner claims she used cash to pay a substantial portion of the reported expenses of Packs to Go. We assume that this was part of the reason she was unable to substantiate most of her reported expenses. However, we are mindful that even expenses for which petitioner claims to have written checks were not adequately substantiated. No canceled checks or bank records of any kind were submitted. This lack of record keeping is inconsistent with the conduct of a bona fide trade or business.

In sum, as stated above, we conclude that Packs to Go did not constitute a trade or business for which petitioner is entitled to Schedule C deductions. Furthermore, for the most part, petitioner did not substantiate the expenses she reported in connection with her Packs to Go activity. To the extent petitioner was able to produce substantiation of any expenses, we find that they were personal expenses rather than Schedule C business expenses. Thus, we sustain respondent's denial of deductions for Packs to Go as a trade or business.

Respondent seeks an addition to tax under section 6651(a)(1). The Commissioner bears the burden of production regarding the additions to tax. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438 (2001). In order to meet this burden, the Commissioner must

produce sufficient evidence indicating that it is appropriate to impose an addition to tax. Higbee v. Commissioner, supra at 446. Once the Commissioner has met this burden, the taxpayer must come forward with evidence sufficient to persuade the Court that the Commissioner's determination is incorrect or an exception applies. Id. at 447.

As relevant here, in general, section 6651(a)(1) provides for an addition to tax that can amount to 25 percent of the tax (net amount) required to be shown on the return if the return is filed more than 4 months after the due date of the return, including extensions. See sec. 6651(b). A taxpayer can be relieved of liability from the additions to tax if the taxpayer demonstrates that the failure to file is due to reasonable cause and not due to willful neglect. Sec. 6651(a); Higbee v. Commissioner, supra.

Reasonable cause for the failure to file a return may be shown where the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence but nevertheless was unable to file the return within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioner's 2002 tax return was introduced into evidence and bears the date of June 5, 2003; petitioner does not dispute that she did not timely file her 2002 tax return.

Respondent has carried his burden regarding the addition to tax. Petitioner did not address her liability for the section

6651(a)(1) addition to tax, either in her testimony or on brief. Consequently, we have no basis on which to conclude that petitioner's failure to timely file her return was due to reasonable cause and not due to willful neglect. We thus hold that petitioner is liable for the section 6651(a)(1) addition to tax as determined by respondent.

To reflect the foregoing,

Decision will be entered

for respondent.